143 P.3d 776 (2006)
CITY OF FIRCREST, Respondent,
v.
Theo JENSEN, Appellant.
No. 76738-6.
Supreme Court of Washington, En Banc.
Argued October 27, 2005.
Decided October 5, 2006.
*778 Linda Medeiros Callahan, Callahan Law, Shelton, Theodore Wayne Vosk, Attorney at Law, Bothell, for Appellant.
Michael Brian Smith, Attorney at Law, Tacoma, Pamela Beth Loginsky, Washington Assoc of Prosecuting Atty, Olympia, for Respondent.
Susan Sackett DanPullo, Office of the Atty. Gen., Olympia, for Amicus Curiae Wash. State Dept. of Licensing.
Shannon Elizabeth Inglis, Attorney General's Office, Seattle, for Amicus Curiae Wash. State Patrol.
C. JOHNSON, J.
¶ 1 This case involves a challenge to Substitute House Bill 3055[1] (SHB 3055), "AN ACT Relating to admissibility of DUI (driving under the influence of an intoxicant) tests; amending RCW 46.61.506; reenacting and amending RCW 46.20.308 and 46.20.3101; and creating a new section." Substitute H.B. 3055, 58th Leg., Reg. Sess. (Wash.2004). The appellant argues the act violates either the United States Constitution or the Washington Constitution by (1) including more than one subject in its title (2) not including the subject of the bill in its title (3) violating the doctrine of separation of powers and/or (4) violating due process by creating a mandatory rebuttable presumption. SHB 3055 took effect on June 10, 2004, and has been challenged in various municipal and district courts on similar grounds with varying results. In this case, the municipal court judge rejected all challenges to the act. We affirm.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 On March 22, 2004, the legislature enacted SHB 3055. In the bill's first section, the legislature conveys its frustration with the inadequacy of previous attempts to curtail the incidence of DUI and sets a goal of ensuring swift and certain consequences for those who drink and drive. In section 2, the bill amends RCW 46.20.308, the implied consent statute, to allow police officers to obtain search warrants for a person's blood or breath, even if that person consents to the search. The bill also revises the warnings a police officer must give to a driver before conducting a breath or blood alcohol concentration test (BAC). These revisions were *779 intended to reflect the then-current state of the law. Section 4 amends RCW 46.61.506 by codifying the foundational requirements for the admissibility of BAC test results and expands the list of people qualified to administer a blood test under RCW 46.20.308.
¶ 3 The facts giving rise to this claim are undisputed. During the early morning hours of October 23, 2004, appellant Theo Jensen was pulled over for speeding by a city of Fircrest police officer. The officer noticed the smell of alcohol on Jensen's breath and proceeded to conduct field sobriety tests. Based on the results of the tests, the smell of alcohol on Jensen's breath, and the fact that Jensen had been speeding, the officer arrested Jensen and took him to the police station to conduct a BAC test. The BAC test results were 0.043 and 0.042, above the 0.02 legal limit for persons under the age of 21.
¶ 4 Jensen moved to suppress the test results on the grounds that SHB 3055 is unconstitutional. The municipal court heard arguments and ultimately denied the motion. Jensen was convicted of driver under 21 consuming alcohol, RCW 46.61.503. Jensen petitioned for direct review of his case under RAP 4.3.

ANALYSIS
¶ 5 We review challenges to the constitutionality of legislation de novo. The party challenging the legislation bears the burden of showing the legislation is unconstitutional. The appellant challenges SHB 3055 on three grounds. First, he argues the bill violates article II, section 19 of the Washington Constitution by either containing more than one subject in the title or not reflecting the subject of the bill in the title. Next, he argues the act violates the doctrine of separation of powers by allowing the legislature to usurp the power of the judiciary to determine the admissibility of evidence. Finally, he argues the substance of the act violates a defendant's due process rights to a fair trial.

I. ARTICLE II, SECTION 19
¶ 6 Article II, section 19 of the Washington Constitution reads, "No bill shall embrace more than one subject, and that shall be expressed in the title." This has been interpreted as creating two distinct prohibitions: first, no bill shall embrace more than one subject (the single-subject rule); and second, no bill shall have a subject not expressed in the title (the subject-in-title rule). State ex rel. Citizens v. Murphy, 151 Wash.2d 226, 249, 88 P.3d 375 (2004). This constitutional mandate serves three distinct purposes:
(1) to protect and enlighten the members of the legislature against provisions in bills of which the titles give no intimation; (2) to apprise the people, through such publication of legislative proceedings as is usually made, concerning the subjects of legislation that are being considered; and (3) to prevent hodge-podge or log-rolling legislation. We have declared that when laws are enacted in violation of this constitutional mandate, the courts will not hesitate to declare them void.
Patrice v. Murphy, 136 Wash.2d 845, 851-52, 966 P.2d 1271 (1998) (quoting State ex rel. Wash. Toll Bridge Auth. v. Yelle, 32 Wash.2d 13, 24, 200 P.2d 467 (1948)). Violation of either the single-subject rule or the subject-in-title rule is sufficient to declare the relevant provisions of the bill unconstitutional. Patrice, 136 Wash.2d at 852, 966 P.2d 1271. Article II, section 19 is liberally construed in favor of upholding the challenged legislation. The burden is on the challenger to establish the bill's unconstitutionality beyond a reasonable doubt.
¶ 7 As a threshold matter, this court must first decide the relevant title of the act. As both parties note, there exists a line of cases establishing that when an act purports to amend a prior act, the relevant title to be examined under article II, section 19 is the title of the original act. St. Paul & Tacoma Lumber Co. v. State, 40 Wash.2d 347, 355, 243 P.2d 474 (1952).[2] Although this rule has *780 never been expressly overruled, it has been called into question by its absence from more recent article II, section 19 challenges involving amendatory acts. See, e.g., Fray v. Spokane County, 134 Wash.2d 637, 952 P.2d 601 (1998) (in article II, section 19 challenge, only the title of the amendatory act was considered). Of the seven lower court rulings submitted by the appellant, four declined to follow St. Paul and analyzed the amendatory title of the act. The remaining three followed St. Paul and analyzed the title of the original act.
¶ 8 The appellant argues that St. Paul and its progeny are an anomaly and should be overruled here. They cite the language of article II, section 19 to assert that the words "[n]o bill" expresses the framers' intention that the mandate apply equally to both original and amendatory acts. The respondent argues only that the appellant has failed to meet its burden to overturn the St. Paul line of cases.
¶ 9 We agree with the respondent that the appellant has failed to show the St. Paul rule, requiring examination of the original title, is harmful and incorrect. Any original act passed by the legislature is subject to traditional article II, section 19 challenges, ensuring compliance with our constitution and adherence to the goals stated above. When amending an original act, it is unnecessary to examine the amendatory title for strict compliance with article II, section 19 because the underlying act has already passed such scrutiny. In these cases, we need only inquire if the amendatory act explicitly identifies what sections of the original act it is purporting to amend and that the amendments proposed could have been included in the original act. If the answer to both questions is yes, the amendatory title passes constitutional scrutiny. We take this opportunity to explicitly reaffirm the St. Paul cases and hold that, for the purposes of article II, section 19 challenges, the title of an amendatory act is sufficient if the title identifies and purports to amend the original act and the subject matter of the amendatory act is within the purview of the title of the original act.
¶ 10 The dissent agrees with the appellant and would likewise overrule St. Paul. The dissent similarly fails to show how the St. Paul rule is incorrect or harmful and provides little reasoning to support its conclusion that the rule undercuts the constitutional provision at issue. In fact, St. Paul does not undercut our constitution, but rather reflects the general understanding of article II, section 19 at the time it was adopted. St. Paul relied primarily on a treatise which explained:
"If the title identifies and purports to amend a prior act, any matter properly connected with, or germane to, the subject expressed in the title of that act may be included in the body of the amendatory act. Any matter that could validly have been enacted as part of the original act under its title is considered germane. If the title of the original act is sufficient to embrace the matter contained in the amendatory act, the sufficiency of the title of the latter will not be inquired into."
St. Paul, 40 Wash.2d at 355, 243 P.2d 474 (quoting 1 J.G. Sutherland, Statutes and Statutory Construction § 1908 (Frank E. Horack, Jr., ed., 3d ed.1943)). The treatise, in turn, reflected the common understanding of how to interpret similar state constitutional provisions. See, e.g., Morford v. Unger, 8 Iowa 82 (1859) (interpreting article III, section 26 of the Iowa Constitution reading, "[e]very law shall embrace but one object which shall be expressed in its title"); In re Miller, 29 Ariz. 582, 244 P. 376, 379 (1926) (interpreting article IV, section 13 of the Arizona Constitution reading, "[e]very act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title"). Thus, St. Paul and its progeny reflect the common understanding of article II, section 19 at the time it was adopted. This rule is well established. Because the appellant and the dissent cannot show how this rule is incorrect or harmful, we will not overrule it.[3]
*781 ¶ 11 The title of SHB 3055 reads, "AN ACT Relating to admissibility of DUI tests; amending RCW 46.61.506; reenacting and amending RCW 46.20.308 and 46.20.3101; and creating a new section." Here, the title of SHB 3055 states explicitly that it is amending RCW 46.61.506 and reenacting and amending RCW 46.20.308 and 46.20.3101. The act meets the first prong of the above test by explicitly identifying and announcing its amendment of the original act.
¶ 12 Next, we must determine if the subject matter of SHB 3055 falls within the scope of the original act. The title of the original act reads, "AN ACT Relating to vehicles; providing for the regulation and licensing thereof and of persons in relation thereto; providing for the collection and disposition of moneys; enacting a vehicle code to be known as Title 46 of the Revised Code of Washington"Motor Vehicles"; providing penalties; repealing certain acts and parts of acts; and declaring an emergency." LAWS OF 1961, CH. 12. The scope of the original act includes the creation of Title 46 of the Revised Code of Washington and deals specifically with motor vehicles, the regulation and licensing of vehicles and persons, and provides penalties for violations of the act. The subject matter of SHB 3055, which concerns preliminary procedures of BAC tests, including search warrants and required warnings along with the admissibility of BAC tests in court, logically fits within the ambit of the regulation of vehicles and penalties for violations of those regulations. We conclude that the title of SHB 3055 adequately announces it is amending the Motor Vehicle Act, and the subject matter of SHB 3055 is within the purview of the Motor Vehicle Act. SHB 3055 does not offend article II, section 19 of our constitution.

II. SEPARATION OF POWERS
¶ 13 The doctrine of separation of powers, implicit in our state constitution, divides the political power of the people into three co-equal branches of government. Though the doctrine is designed to prevent one branch from usurping the power given to a different branch, the three branches are not hermetically sealed and some overlap must exist. "`The question to be asked is not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.'" State v. Moreno, 147 Wash.2d 500, 505-06, 58 P.3d 265 (2002) (quoting Carrick v. Locke, 125 Wash.2d 129, 135, 882 P.2d 173 (1994)). The issue here is whether the legislature is threatening the independence or integrity or invading the prerogative of the judiciary by passing SHB 3055.
¶ 14 This court is vested with judicial power from article IV of our state constitution and from the legislature under RCW 2.04.190.[4] The inherent power of article IV includes the power to govern court procedures. The delegated power of RCW 2.04.190 includes the power to adopt rules of procedure. State v. Fields, 85 Wash.2d 126, 128-29, 530 P.2d 284 (1975). In general, the judiciary's province is procedural and the legislature's is substantive. "Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated." State v. Smith, 84 Wash.2d 498, 501, 527 P.2d 674 (1974). The adoption of the rules of evidence is a legislatively delegated power of the judiciary. RCW 2.04.190. Therefore, rules of evidence may be promulgated by both the legislative and judicial branches. When a court rule and a statute conflict, the court will attempt to harmonize them, giving effect *782 to both. Whenever there is an irreconcilable conflict between a court rule and a statute concerning a matter related to the court's inherent power, the court rule will prevail. Wash. State Council of County & City Employees v. Hahn, 151 Wash.2d 163, 168-69, 86 P.3d 774 (2004).
¶ 15 The appellant argues that SHB 3055 is not a substantive bill but instead is an attempt to regulate court procedure by mandating the admission of BAC test results. The appellant relies on the language of section 4(4)(c), which reads:
Nothing in this section shall be deemed to prevent the subject of the test from challenging the reliability or accuracy of the test, the reliability or functioning of the instrument, or any maintenance procedures. Such challenges, however, shall not preclude the admissibility of the test once the prosecution or department has made a prima facie showing of the requirements contained in (a) of this subsection. Instead, such challenges may be considered by the trier of fact in determining what weight to give to the test result.
SHB 3055, § 4(4)(c) (emphasis added). Thus, according to the appellant, once the State has met its prima facie burden under section 4(4)(a), the results of the BAC test must be admitted. The appellant argues that under this interpretation, the act conflicts directly with the court's authority to exclude evidence based on relevancy or prejudice under ER 401, 402, 403, and 404(b).
¶ 16 The respondent argues that SHB 3055 is merely a codification of admissibility rules for BAC tests as they have developed from our case law. This court first outlined the prima facie requirements for the admission of Breathalyzer test results in State v. Baker, 56 Wash.2d 846, 355 P.2d 806 (1960). The prima facie requirements under Baker are that (1) the machine was properly checked and in proper working order at the time of conducting the test (2) the chemicals employed were of the correct kind and compounded in the proper proportions (3) the subject had nothing in his mouth at the time of the test and that he had taken no food or drink within 15 minutes prior to taking the test and (4) the test be given by a qualified operator and in the proper manner. All remaining challenges went to the weight of the test results, not its admissibility. Baker, 56 Wash.2d at 852-55, 355 P.2d 806. In 1969, by initiative, the role of approving testing instruments, establishing procedures for conducting tests, and licensing individuals to conduct the test was delegated to a state toxicologist. The toxicologist eventually recommended that the machine be switched from the Breathalyzer to the BAC Verifier DataMaster machine and adopted appropriate regulations, including a modified version of the four Baker requirements. The respondent argues that this court continued to look only to the modified Baker requirements codified in the Washington Administrative Code by the toxicologist and regarded all other challenges as going to weight and not admissibility.
¶ 17 However, in 2004, this court deviated from precedent and suppressed numerous BAC tests based on a failure to comply with a WAC that did not concern one of the four Baker requirements. City of Seattle v. Clark-Munoz, 152 Wash.2d 39, 93 P.3d 141 (2004) (holding that the State failed to comply with former WAC 448-13-035 (2001) by using thermometers not traceable to standards maintained by the National Institute of Standards and Testing). The respondent maintains that in response to Clark-Munoz, the legislature restored its authority to prescribe admissibility requirements, which had previously been delegated to the state toxicologist, by enacting SHB 3055. The legislature is now reaffirming the modified Baker requirements and expanding them to include three additional requirements, as prima facie evidence of admissibility and requiring all other challenges to the reliability or accuracy of the tests to go to the weight of the evidence.[5] Essentially, the legislature is attempting *783 to return the requirements of BAC test admissibility to the way it was before our holding in Clark-Munoz.
¶ 18 The respondent further argues that the standard adopted in SHB 3055 is the legislature's attempt to put BAC test results on the same level as other scientific tests, such as DNA (deoxyribonucleic acid) test results. That is, the legislature is essentially adopting the Frye[6] rule for BAC test admissibility. Under the Frye standard, scientific evidence is admissible when it is generally accepted as reliable within the relevant scientific community. The courts need not assess the reliability of the scientific evidence, they should defer to the judgment of scientists. State v. Copeland, 130 Wash.2d 244, 254, 922 P.2d 1304 (1996). Once the Frye standard is satisfied, however, the trial court resumes its role as gatekeeper and may exclude otherwise admissible evidence by applying the rules of evidence.
¶ 19 In the DNA analogy, DNA admissibility has been accepted under Frye; however, challenges to the weight of the DNA evidence, including laboratory error, the size, quality, and randomness of Federal Bureau of Investigation (FBI) databases, and the methodology and practices of the FBI in declaring a DNA match, are subject to ER 702 admissibility as determined by the trial court. State v. Cannon, 130 Wash.2d 313, 325, 922 P.2d 1293 (1996). Similarly, the respondent argues, SHB 3055 sets forth the standards for reliability; once reliability of the test is established by a prima facie showing from the State, all other challenges concerning the accuracy or reliability of the test, the testing instrument, or the maintenance procedures necessarily go to the weight of the test results. That is, the trial court may still utilize the rules of evidence, including ER 702, to determine if the BAC test results will be admitted.
¶ 20 The twin cases of State v. Zwicker, 105 Wash.2d 228, 713 P.2d 1101 (1986), and State v. Long, 113 Wash.2d 266, 778 P.2d 1027 (1989), are helpful to our analysis. Both cases involve the implied consent statute, RCW 46.20.308, and its evidentiary counterpart, RCW 46.61.517. The implied consent statute, passed in 1969, states that any person who operates a motor vehicle within the state has consented to have his or her blood or breath tested for purposes of detecting the presence of alcohol or other drugs. Consent can be revoked by refusal to submit to the tests. In the first version of RCW 46.61.517, refusal to submit to a test was admissible without comment and required a jury instruction that no inference could be drawn from the defendant's refusal. In Zwicker, this court held that because no inference could be drawn from the refusal, the evidence was not part of the State's case in chief and therefore could be admitted only if the defendant first opened the matter by arguing lack of credibility or competence on the part of the police. In 1985 and 1986, the legislature amended the statute to read only that refusal to submit to a BAC test was admissible and deleted the language concerning the jury instruction or the requirement that the evidence be admitted without comment. In Long, this court interpreted these amendments as a legislative determination that refusal evidence is admissible to infer guilt or innocence, commenting "[w]e see no *784 satisfactory reason not to follow the Legislature's now clear intent of rendering refusal evidence fully admissible in a criminal trial for driving while under the influence of intoxicants." Long, 113 Wash.2d at 272-73, 778 P.2d 1027. In recognizing this legislative rule of evidence, this court made clear that depending on the facts of a particular case, a trial court could still exclude such evidence if its probative value were substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury under ER 403.
¶ 21 The same analysis applies here. The legislature has made clear its intention to make BAC test results fully admissible once the State has met its prima facie burden. No reason exists to not follow this intent. The act does not state such tests must be admitted if a prima facie burden is met; it states that such tests are admissible. The statute is permissive, not mandatory, and can be harmonized with the rules of evidence. There is nothing in the bill, either implicit or explicit, indicating a trial court could not use its discretion to exclude the test results under the rules of evidence. The legislature is not invading the prerogative of the courts nor is it threatening judicial independence. SHB 3055 does not violate the separation of powers doctrine.

III. DUE PROCESS
¶ 22 The appellant argues that under the federal and state constitutions, he is entitled to a fair trial, including a right to be convicted by reliable evidence. He argues that SHB 3055 violates his rights because it admits unreliable evidence and inappropriately places the burden of proof of the reliability of the evidence on the defendant. The appellant's argument is without merit.
¶ 23 The foundational requirements to establish the admissibility of breath tests were first established in Baker. Since Baker, the State has always had the initial burden to satisfy the foundational requirements. Once the results are admitted, the defendant may introduce evidence attacking their accuracy or reliability. City of Seattle v. Allison, 148 Wash.2d 75, 79-80, 59 P.3d 85 (2002). Similarly, SHB 3055 sets forth the requirements the State must establish, including the four modified Baker requirements, before the BAC test results may be admitted. Once the State makes a prima facie showing of admissibility and the court admits the evidence, the defendant may introduce evidence attacking the reliability or accuracy of the test. SHB 3055 does not alter the burden of the State in DUI cases, it is merely codifying it. The appellant has not shown an impermissible or unconstitutional shifting of the evidentiary burden.

CONCLUSION
¶ 24 The Motor Vehicle Act does not violate article II, section 19, the separation of powers doctrine, nor does it offend due process as embodied in both the state and federal constitutions. The trial court is affirmed.
Concurring: ALEXANDER, C.J., MADSEN and BRIDGE.
OWENS, J. (concurring).
¶ 25 I concur in the majority's rejection of the appellant's constitutional claims. However, while I agree with the majority that Substitute House Bill 3055 (SHB 3055), Laws of 2004, ch. 68, does not violate article II, section 19 of the Washington Constitution, I share the dissent's disagreement with the method that the majority has adopted to assess the bill's compliance with the constitutional provision.
¶ 26 Article II, section 19 comprises "two distinct prohibitions." Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 207, 11 P.3d 762, 27 P.3d 608 (2000). The first clause, the single-subject rule, provides that "[n]o bill shall embrace more than one subject," while the second clause, the subject-in-title (or clear-title) rule, stipulates that "that [subject] shall be expressed in the title." WASH. CONST. art. II, § 19 (emphasis added). As we have frequently acknowledged, "[t]he purpose of [the single-subject clause] is to prevent logrolling or pushing legislation through by attaching it to *785 other legislation,"[1] while the aim of the subject-in-title rule is "to notify members of the Legislature and the public of the subject matter of the measure." Amalgamated, 142 Wash.2d at 207, 11 P.3d 762 (emphasis added).
¶ 27 The majority purports to analyze both the single-subject and subject-in-title requirements by applying the rule set forth in St. Paul & Tacoma Lumber Co. v. State, 40 Wash.2d 347, 243 P.2d 474 (1952). Majority at 779-81. I would explicitly overrule the St. Paul rule as "incorrect and harmful."[2] Not only is the rule contrary to the plain language of article II, section 19, its initial application in St. Paul in 1952 was a departure from this court's prior article II, section 19 decisions expressly rejecting the kind of title the St. Paul rule permitsa title that provides insufficient notice of an act's subject. Additionally, that the St. Paul rule was not well founded or well explained is evident in its meager offspringfour cases filed between 1957 and 1971 that do not apply the rule consistently (the majority opinion, which merely cites the four, makes it five); moreover, in a 1960 decision, the majority neglected the rule entirely. Finally, in cases spanning the last 25 years, this court has silently, but clearly overruled the St. Paul rule by reaffirming this court's earliest decisions interpreting article II, section 19. In sum, I would adhere to the plain language of article II, section 19 and analyze SHB 3055's compliance with the provision by asking whether SHB 3055 "embrace[s]" a single subject and whether that subject is "expressed in the title." Contrary to the dissent, I would conclude that SHB 3055 satisfies the single-subject and subject-in-title requirements.
¶ 28 The St. Paul Rule. The St. Paul court was asked to determine the constitutionality of a 1949 bill imposing an excise tax on a lumber company's use of articles derived from timber the company had cut in this state. The lumber company contended that the 1949 amendments to the original revenue act of 1935 violated article II, section 19 because "the title of the amendatory act" did not notify legislators or the public "that the 1949 amendments changed the scope and object of the law as enacted in 1935." 40 Wash.2d at 355, 243 P.2d 474. Responding to the lumber company's clear-title challenge, the St. Paul court turned to the following rule:
"If the title identifies and purports to amend a prior act, any matter properly connected with, or germane to, the subject expressed in the title of that act may be included in the body of the amendatory act. Any matter that could validly have been enacted as part of the original act under its title is considered germane. If the title of the original act is sufficient to embrace the matter contained in the amendatory act, the sufficiency of the title of the latter will not be inquired into."
Id. (quoting 1 J.G. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 1908, at 345-46 (Frank E. Horack, Jr., ed., 3d ed.1943) (footnotes omitted)). In other words, as long as the title of an amendatory bill identifies the prior act that it is *786 amending, the new bill may permissibly include "`[a]ny matter that could validly have been enacted as part of the original act under its title.'" Id. The St. Paul court thus began its application of the rule by quoting the title of the original revenue act of 1935"`AN ACT relating to revenue and taxation; ... providing for the levy and collection of a tax upon the use of personal property'"and went on to observe that "[t]he title of the 1949 amendatory act states that it is an act relating to revenue and taxation and denominates specifically the sections of the 1935 act, as amended, which it further amends." Id. (citation omitted). Concluding that "[t]he title of the 1935 act was certainly broad enough to have permitted, as part of the original act, the 1949 amendments with which we are concerned," the St. Paul court rejected the lumber company's clear-title challenge with no further discussion. Id.
¶ 29 The St. Paul court applied the rule to the lumber company's clear-title challenge without acknowledging that the rule is inconsistent with the plain language of article II, section 19 and contrary to this court's earliest decisions interpreting the clear-title provision. As the dissent correctly points out, given that article II, section 19 reads, "[n]o bill shall embrace more than one subject" (emphasis added), "[c]learly, the plain text of our constitution does not differentiate between `original' and `amendatory' bills." Dissent at 790-91 n. 1. By its plain language, article II, section 19 requires that any bill, whether original or amendatory, must embrace a single subject that is expressed in that bill's title.
¶ 30 By adopting a rule that permits the title of an amendatory bill to say nothing more than "An Act amending a Prior Act," the St. Paul court ignored this court's earliest article II, section 19 decisions rejecting precisely the type of title that the St. Paul rule permits. In a brief filed in Fray v. Spokane County, 134 Wash.2d 637, 952 P.2d 601 (1998), amicus curiae Washington State Council of Police Officers explained that "[t]he delegates to the Constitutional Convention did not write on a blank slate" when they drafted article II, section 19, since "[t]he Organic Act which organized the Territory of Washington had similarly required that ... `every law shall embrace but one object, and that shall be expressed in the title.'" Br. of Amicus Curiae Wash. State Council of Police Officers at 7 (Fray v. Spokane County, No. 65236-8 (Wash.Sup.Ct. 1998)) (quoting U.S. Stats. 32nd Cong., Sess. II, ch. 90, § 6 (1853)). The amicus recalled that in Harland v. Territory, 3 Wash. Terr. 131, 13 P. 453 (1887), "[t]he leading case interpreting this clause of the Organic Act," id., the court considered the permissibility under the Organic Act of a statute entitled, "`[a]n act to amend section 3050, chapter 238, of the Code of Washington Territory.'" 3 Wash. Terr. at 137, 13 P. 453. The Harland court concluded that "the clear weight of authority, and certainly sound reason, [was] against the position that a reference to a section in the title of an amendatory act without more is in any case sufficient" to satisfy the clear-title provision in the Organic Act. Id. at 151, 13 P. 453.
¶ 31 Fifteen years later, in State ex rel. Seattle Electric Co. v. Superior Court, 28 Wash. 317, 68 P. 957 (1902), the court reaffirmed Harland, holding that the title "`[a]n act to amend section 5645 of Ballinger's Annotated Codes and Statutes of Washington"' failed to satisfy article II, section 19. Id. at 321, 68 P. 957. The court fully explained its holding:
[T]he mandate of the constitution seems to us so plain that we conceive it to be our duty to hold squarely that a mere reference to a section in the title of an act does not state a subject. What is the significance of the word "subject," in this connection? Webster defines it as "that of which anything is affirmed or predicated; the theme of a proposition or discourse; that which is spoken of." To say that mere reference to a numbered section embodies the idea of a theme, proposition, or discourse, it seems to us, is not sustained by the ordinary understanding of those terms. The theme of a legislative act is that of which it treats, and an amending act treats of the theme covered by the act sought to be amended. We therefore see no escape from the conclusion that the title of an amending act must contain some words which indicate *787 the theme or proposition of which the act sought to be amended treats.

Id. at 325-26, 68 P. 957 (emphasis added). The decisions in Harland and Seattle Electriccases decided closely before and after the Constitutional Conventionundeniably refute the claim made by the majority in the present case that the St. Paul rule "does not undercut our constitution, but rather reflects the general understanding of article II, section 19 at the time it was adopted."[3] To the contrary, the rule that the St. Paul court adopted in 1952a rule that reduced the descriptive title of an amendatory act to surplusage in an article II, section 19 inquiry was a sharp departure from this court's understanding of the subject-in-title provision in 1887 and 1902.
¶ 32 In sum, the St. Paul court adopted a rule that was "incorrect and harmful." In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970). The St. Paul court negated, with neither discussion nor acknowledgment, this court's prior decisions, turning instead to a treatise that stated a principle unsupported by any citations to Washington cases. See 1 SUTHERLAND, supra, § 1908. Moreover, the St. Paul court made notice irrelevant and thereby contravened the aim of the subject-in-title requirementthe notification of legislators and the public as to the subject of a piece of legislation. The treatise on which the St. Paul court relied specifically stated that, under the rule at issue, "[n]o statement of the matter with which the amendatory act deals nor any expression of the particulars in which the original act or section is altered is necessary." Id.; see also Water Dist. No. 105 v. State, 79 Wash.2d 337, 340, 485 P.2d 66 (1971) (expressly stating that, under the St. Paul rule, "the issue is not ... whether the title of the [amendatory] act gives notice of the subject matter contained therein").
¶ 33 The St. Paul Cases. In the 20 years after St. Paul was decided, the St. Paul rule, which was directed at the subject-in-title requirement of article II, section 19, was applied in four cases and ignored by the majority in another. In two of the four cases, the article II, section 19 inquiry was restricted to the subject-in-title requirement, although it is not entirely clear that the challenge had been likewise restricted. In Goodnoe Hills School District No. 24 v. Forry, 52 Wash.2d 868, 329 P.2d 1083 (1958), the court noted the appellants' contention that an amendatory act violated article II, section 19 and their "argu[ment] that included within [the amendatory act's] title are two subjects." Id. at 873, 329 P.2d 1083. The Goodnoe court applied the St. Paul rule and concluded that the title of a 1955 amendatory act was not "constitutionally repugnant," since it came within the general title of the original 1953 legislation. Id. at 873-74, 329 P.2d 1083. Similarly, in Belancsik v. Overlake Memorial Hospital, 80 Wash.2d 111, 492 P.2d 219 (1971), the issue is initially defined as whether an amendatory statute violated article II, section 19, but the court applied the St. Paul rule and focused its inquiry on the constitutional adequacy of the title.
¶ 34 In the other two St. Paul cases, the court applied the St. Paul rule to the subject-in-title inquiry and then considered the single-subject requirement, but the courts differed in how they analyzed the subject of the amendatory act. In Keeting v. Public Utility District No. 1 of Clallam County, 49 Wash.2d 761, 306 P.2d 762 (1957), the single-subject inquiry was framed as whether "the [original and amendatory] acts embrace more than one subject." Id. at 764, 306 P.2d 762. The court appeared to conclude that the amendatory act's changes in the original law constituted a single subject because they "related to the single subject" expressed in the original act's title. Id. However, while the single-subject analysis in Keeting was evidently affected by the St. Paul rule, this court took the customary approach to single-subject analysis in Water District, 79 Wash.2d 337, 485 P.2d 66. The Water District court concluded that "[t]he subjects contained in the body of the [amendatory] act. . . are naturally and reasonably connected *788 with the general subject, relating to water districts, expressed in the [amendatory act's] title." Id. at 342, 485 P.2d 66.
¶ 35 That the St. Paul court did not adequately explain how the rule was to be applied is not only apparent in the four St. Paul cases, it is evident in the way the majority in the present case has applied the rule. Even though the appellant has challenged the constitutionality of SHB 3055 on both single-subject and subject-in-title grounds, the majority rests after applying the St. Paul rule, a rule that by its terms was intended only to test the constitutionality of an amendatory act's title. The majority must provide a single-subject analysis and resolve the question raised by the differing approaches in Keeting and Water Districtthat is, what effect, if any, does the St. Paul rule have on the single-subject analysis. An additional shortcoming in the majority's decision to "reaffirm the St. Paul cases," majority at 780, is the majority's failure to acknowledge that, in the time period spanned by the St. Paul cases, this court decided Price v. Evergreen Cemetery Co., 57 Wash.2d 352, 357 P.2d 702 (1960). There, a majority of the court failed to apply the St. Paul rule. See id. at 358-59, 357 P.2d 702 (Finley, J., dissenting). In sum, had the majority in the present case done more than merely cite the four St. Paul cases, see majority at 779 n. 2, it would have discovered that the St. Paul rule was not applied clearly in the St. Paul cases or adopted consistently in the time period spanned by those cases.
¶ 36 Cases Silently Overruling the St. Paul Rule. As the appellant has pointed out, while the St. Paul rule has been applied in only five cases (most recently in 1971), dozens of cases could be cited in which the court weighed the constitutionality of an amendatory act without recourse to the title of the original act. See Reply Br. of Appellant at 10 n. 11 (collecting cases). For example, in Patrice v. Murphy, 136 Wash.2d 845, 966 P.2d 1271 (1998), this court was asked to determine whether the title of an amendatory act, "`AN ACT Relating to court costs,'" was sufficient to express the subject of an act that required arresting officers to provide interpreters for hearing-impaired persons. Id. at 853, 966 P.2d 1271. The Patrice court made its determination that the title was constitutionally insufficient by looking exclusively at the title of the amendatory act, silently ignoring the St. Paul rule. Indeed, the weight of our case law has adhered to two principles contrary to the St. Paul rule: that, for purposes of a subject-in-title challenge to an amendatory act, the relevant title is the title of the amendatory act and the amendatory act's title must do more than point to the act being amended. See Seattle Elec., 28 Wash. at 325-26, 68 P. 957; Fray, 134 Wash.2d at 654-55, 952 P.2d 601 (reaffirming that the "`mere reference to a section in the title of an act does not state a subject'" (quoting Seattle Elec., 28 Wash. at 325, 68 P. 957)); State v. Thomas, 103 Wash. App. 800, 808, 14 P.3d 854 (2000) (defining the relevant title as "the word, phrase, or phrases following `AN ACT Relating to ...' and preceding the first semicolon").
¶ 37 SHB 3055's Compliance with Article II, Section 19. This court has adopted a framework that makes the single-subject analysis contingent on the preliminary labeling of the bill's title as either "general" or "restrictive."[4] A general title "is broad rather than narrow." Amalgamated, 142 Wash.2d at 207, 11 P.3d 762. Where a title is general, the act will have a single subject if the parts of the bill are germane to the title and rationally related to each other. Citizens for Responsible Wildlife Mgmt. v. State, *789 149 Wash.2d 622, 632-33, 71 P.3d 644 (2003); Amalgamated, 142 Wash.2d at 209, 11 P.3d 762; Pierce County v. State, 150 Wash.2d 422, 431 n. 3, 78 P.3d 640 (2003).
¶ 38 I would define the title of SHB 3055, "AN ACT Relating to admissibility of DUI [driving under the influence of an intoxicant] tests," as general. Although "DUI" does refer to a specific statute, the average citizen would interpret the acronym more broadly as a reference to alcohol-related driving offenses. I would conclude that, because the component parts of SHB 3055 are rationally related to the general title and to each other, the act embraces a single subject. The incidental subjects of SHB 3055 are search warrants under the implied consent statute, requirements governing an officer's request for a blood draw, warnings to be given to a suspect under the implied consent statute prior to administering a blood or breath alcohol concentration (BAC) test, and the foundational requirements for admission of BAC test results. The incidental subjects are directed toward providing uniform standards for the admissibility of BAC tests and relate to how or when the test must be conducted to ensure its validity and admissibility.
¶ 39 I would likewise conclude that the subject of SHB 3055 was sufficiently expressed in the bill's title to pass article II, section 19 muster. To satisfy the constitutional requirement, a bill's "title need not be an index to the contents, nor must it provide details of the measure." Citizens, 149 Wash.2d at 639, 71 P.3d 644. The title of SHB 3055 is a general expression of the bill's contents and is sufficient to notify legislators and the public that the bill contains provisions rationally related to the admissibility of tests administered pursuant to alcohol-related driving offenses.
¶ 40 In sum, I concur in the majority's conclusion that SHB 3055 does not violate article II, section 19, but I join the dissent in rejecting the majority's reliance on the St. Paul rule to assess the bill's compliance with the constitutional provision. The St. Paul court mistakenly imported into its article II, section 19 analysis a rule applicable to a type of bill title that this court had already rejected decades earlier as constitutionally repugnant. The majority's resurrection of the St. Paul rule effectively provides a safe constitutional harbor for amendatory acts that give absolutely no notice of their contents beyond a spare reference to the act being amended. Because the St. Paul rule subverts the purpose of the subject-in-title requirement of article II, section 19, this court should explicitly disapprove the rule.
Concurrence: FAIRHURST and CHAMBERS, JJ.
SANDERS, J. (dissenting).
¶ 41 In 2004 the legislature enacted Substitute House Bill 3055 (SHB 3055), entitled, "AN ACT Relating to admissibility of DUI [driving under the influence of an intoxicant] tests." Substitute H.B. 3055, 58th Leg., Reg. Sess. (Wash.2004); Laws of 2004, ch. 68. This statute violates article II, section 19 of the Washington State Constitution by (1) embracing multiple subjects and (2) including subjects not expressed in its title. It also violates separation of powers by impermissibly invading the article IV judicial power reserved exclusively to the courts to determine the admissibility of evidence. I would hold SHB 3055 unconstitutional in its entirety and therefore dissent.

I. ARTICLE II, SECTION 19
¶ 42 The majority undermines the protections of article II, section 19 by misapplying St. Paul & Tacoma Lumber Co. v. State, 40 Wash.2d 347, 355, 243 P.2d 474 (1952) to hold the subject of SHB 3055 is expressed in its title. The majority then compounds its error by conflating the two distinct inquiries under article II, section 19, concluding the subject-in-title analysis disposes of the multiple subject claim as well.
¶ 43 Article II, section 19 of the Washington Constitution provides, "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." WASH. CONST. art. II, § 19. This clause mandates two distinct prohibitions: "`(1) No bill shall embrace more than one subject; and (2) the subject of every bill shall be expressed in the title.'" Patrice v. Murphy, 136 Wash.2d 845, 852, 966 P.2d 1271 (1998) (quoting State ex *790 rel. Wash. Toll Bridge Auth. v. Yelle, 32 Wash.2d 13, 23, 200 P.2d 467 (1948)). The first prohibition, the single-subject rule, ensures legislators are not forced to vote for provisions they do not support in order to secure the enactment of those they do, a practice known as "logrolling" legislation. The second prohibition, the subject-in-title rule, ensures legislators and the public are notified of the subject matter of a bill. "We have declared that when laws are enacted in violation of [these rules], the courts will not hesitate to declare them void." State ex rel. Wash. Toll Bridge Auth., 32 Wash.2d at 24, 200 P.2d 467.
¶ 44 Constitutional challenges raise questions of law subject to de novo review. City of Redmond v. Moore, 151 Wash.2d 664, 668, 91 P.3d 875 (2004).

II. ARTICLE II, SECTION 19'S SINGLE-SUBJECT RULE
¶ 45 Whether a measure contains more than one subject "is founded on the question whether a measure is drafted in such a way that those voting on it may be required to vote for something of which the voter disapproves in order to obtain approval of an unrelated law." Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 212, 11 P.3d 762, 27 P.3d 608 (2000). For a bill to pass constitutional muster under the single-subject rule "`there must be some rational unity between the matters embraced in the act, the unity being found in the general purpose of the act and the practical problems of efficient administration.'" State ex rel. Wash. Toll Bridge Auth. v. Yelle, 61 Wash.2d 28, 33, 377 P.2d 466 (1962) (quoting State ex rel. Test v. Steinwedel, 203 Ind. 457, 467, 180 N.E. 865, 868 (1932)). Rational unity is lacking if a bill's provisions are not necessary to implement one another. Amalgamated, 142 Wash.2d at 217, 11 P.3d 762. A bill embracing more than one subject must be struck down in its entirety because "we cannot know if either subject ... would have garnered popular support standing alone." City of Burien v. Kiga, 144 Wash.2d 819, 828, 31 P.3d 659 (2001).
¶ 46 SHB 3055 lacks rational unity between its provisions. In addition to addressing the admissibility of DUI tests, SHB 3055, sections 2 and 3 also authorize search warrants for a person's breath or blood, reduce the requirements of implied consent warnings to require only substantial compliance by the police, address license sanctions stemming from arrests, and implement procedural changes regarding the arrest of persons under 21 years of age for driving impaired. None of these subjects is necessary to implement the DUI test admissibility provisions of section 4 of SHB 3055. Consequently, SHB 3055 violates the single-subject prong of article II, section 19 of the Washington Constitution. Amalgamated, 142 Wash.2d at 217, 11 P.3d 762.
¶ 47 This conclusion is further reinforced by actual evidence of logrolling. Section 2 of SHB 3055 denies occupational licenses to drivers who refuse breath tests. However later in the same session the legislature unanimously passed SHB 2660 to allow occupational licenses for such drivers. LAWS OF 2004, CH. 95 (Substitute H.B. 2660, 58th Leg., Reg. Sess. (Wash.2004)). The passage of these bills cannot be logically reconciled other than to conclude those voting for SHB 3055 voted for at least one provision they did not support to ensure the passage of those they did. This is evidence of a textbook example of logrolling in violation of our constitution.
¶ 48 Inexplicably, the majority's analysis of whether SHB 3055 addresses more than one subject is limited to its title, a constitutionally separate inquiry, and lacks any meaningful scrutiny of the bill's substance. See majority at 779-81. As a preliminary matter it must be noted the Washington Constitution does not provide, and we have never held, a bill which impermissibly embraces more than one subject is nonetheless constitutional because its title, or the title of a bill it purports to amend, somehow rectifies the violation. Furthermore, the case relied on by the majority for its holding, St. Paul, 40 Wash.2d 347, 243 P.2d 474[1] does not support its resolution of the single-subject claim at all.
*791 ¶ 49 In St. Paul the petitioners challenged the constitutionality of a bill amending the revenue act under article II, sections 19, 37, and 38, "claim[ing] that the 1949 amendments changed the scope and object of the law as enacted in 1935 and the title of the amendatory act gave no notice of such a purpose." St. Paul, 40 Wash.2d at 355, 243 P.2d 474. Thus, the petitioners were challenging the amendatory act solely on the basis of its alleged violation of the subject-in-title rule, not the single-subject rule or both. This conclusion is reflected in the holding of that case:
"If the title identifies and purports to amend a prior act, any matter properly connected with, or germane to, the subject expressed in the title of that act may be included in the body of the amendatory act. Any matter that could validly have been enacted as part of the original act under its title is considered germane. If the title of the original act is sufficient to embrace the matter contained in the amendatory act, the sufficiency of the title of the latter will not be inquired into."
St. Paul, 40 Wash.2d at 355, 243 P.2d 474 (quoting 1 J.G. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 1908, at 345-46 (Frank E. Horack, Jr., ed. (3d ed.1943) (emphasis added))).
¶ 50 Because it is expressly limited to challenges to the sufficiency of only the title of an act, the holding of St. Paul is not relevant to Theo Jensen's single-subject claim. Since it is in violation of the single-subject rule, SHB 3055 is invalid in its entirety. Kiga, 144 Wash.2d at 828, 31 P.3d 659.

III. ARTICLE II, SECTION 19'S SUBJECT-IN-TITLE RULE
¶ 51 It is also argued SHB 3055 violates the subject-in-title rule. This rule requires the subject of a bill be expressed in its title. We have explained its practical application as follows:
"The wisdom of the rule suggests itself, in that the reader, whether a member of the legislature or otherwise, may, by a mere glance at a few catch words in the title, be apprised of what the act treats, without further search. Does the title of the act in question contain such a statement of the subject-matter?"
Patrice, 136 Wash.2d at 852, 966 P.2d 1271 (quoting State ex rel. Seattle Elec. Co. v. Superior Court, 28 Wash. 317, 321, 68 P. 957 (1902)).
¶ 52 SHB 3055 states it is "AN ACT Relating to admissibility of DUI tests; amending RCW 46.61.506; reenacting and amending RCW 46.20.308 and 46.20.3101; and creating a new section." But that is not the "title" of SHB 3055 for the purposes of our analysis. "The title relevant to the article II, section 19 inquiry is the word, phrase, or phrases following `AN ACT Relating to ...' and preceding the first semicolon." State v. Thomas, 103 Wash.App. 800, 808, 14 P.3d 854 (2000) (citing Fray v. Spokane County, 134 Wash.2d 637, 655, 952 P.2d 601 (1998); Patrice, 136 Wash.2d at 853, 966 P.2d 1271). Our analysis must focus on the narrative description of the bill, and not on the "ministerial recital of [its] sections." Id. at 809, 14 P.3d 854. "[A] `mere reference to a section in the title of an act does not state a subject.'" Fray, 134 Wash.2d at 654-55, 952 P.2d 601 (quoting State ex rel. Seattle Elec. Co., 28 Wash. at 325, 68 P. 957). The title of SHB 3055 is "AN ACT Relating to admissibility of DUI tests." (Emphasis added.)
¶ 53 We next consider whether the title is general or restrictive. A general title is broad rather than narrow, comprehensive *792 and generic rather than specific.[2]Amalgamated, 142 Wash.2d at 207-08, 11 P.3d 762. Conversely, a restrictive title is one where "`a particular part or branch of a subject is carved out and selected as the subject of the legislation.'"[3]State v. Broadaway, 133 Wash.2d 118, 127, 942 P.2d 363 (1997) (quoting Gruen v. State Tax Comm'n, 35 Wash.2d 1, 23, 211 P.2d 651 (1949), overruled on other grounds by State ex rel. State Fin. Comm. v. Martin, 62 Wash.2d 645, 384 P.2d 833 (1963)).
¶ 54 In my view the title "AN ACT Relating to admissibility of DUI tests" is general. Mr. Jensen is correct to point out the title does not refer to all BAC (breath or blood alcohol concentration) tests; however this fact alone is not dispositive. The title of SHB 3055 meets the criteria of "[a] few well-chosen words, suggestive of the general subject stated," State ex rel. Scofield v. Easterday, 182 Wash. 209, 212, 46 P.2d 1052 (1935) and therefore constitutes a general title encompassing issues related to the subject of admissibility of DUI tests.
¶ 55 As discussed above, the references to the sections of chapters 46.20 and 46.61 RCW that SHB 3055 reenacts and amends included after its title do not state a subject and are not part of subject-in-title analysis. Fray, 134 Wash.2d at 654-55, 952 P.2d 601 (citing State ex rel. Seattle Elec. Co., 28 Wash. at 325, 68 P. 957). Consequently, the question before this court is whether a reader would be apprised of SHB 3055's subject matter by reading its title. Patrice, 136 Wash.2d at 852, 966 P.2d 1271. The answer is no.
¶ 56 Although "`[t]he title to a bill need not be an index to its contents; nor is the title expected to give the details contained in the bill,'" Washington Federation of State Employees v. State, 127 Wash.2d 544, 555, 901 P.2d 1028 (1995),[4] the bill's title must "lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law." Young Men's Christian Ass'n v. State, 62 Wash.2d 504, 506, 383 P.2d 497 (1963). Here, the title provides no indication SHB 3055, in addition to involving the admissibility of DUI tests, also includes provisions affecting search warrants for breath and blood, breath test machines in medical facilities, implied consent warnings, license sanctions, and procedural changes regarding the arrest of persons under 21 years of age. See SHB 3055, §§ 2, 3.
¶ 57 This court was confronted with a similar scenario in Patrice. There the challenged bill was entitled, "AN ACT Relating to court costs" but also included amendments requiring the appointment of interpreters to assist witnesses in various legal proceedings. Although these services would undoubtedly impact the court costs referenced in the title of the bill, this court nonetheless held article II, section 19 had been violated. Relying on Fray for the proposition that a "`mere reference to a section in the title of an act does not state a subject,'" Fray, 134 Wash.2d at 654-55, 952 P.2d 601 (quoting State ex rel. Seattle Elec. Co., 28 Wash. at 325, 68 P. 957), we concluded the bill's subject was not expressed in its title because "`AN ACT Relating to court costs'" "fail[ed] to mention anything about the inclusion of provisions relating to qualified ASL [American Sign Language] interpreters, legal proceedings, police investigations, or arrests." Patrice, 136 Wash.2d at 853, 966 P.2d 1271.
¶ 58 The same analysis applies here. The title "AN ACT Relating to admissibility of *793 DUI tests" fails to mention search warrants, breath test equipment, implied consent warnings, or license sanctions. In short, the title does not provide an indication of the scope and purpose of the law. Because it fails to meet this standard, the title of SHB 3055 violates the subject-in-title rule of article II, section 19 of the Washington Constitution. Sections not related to the subject of admissibility of DUI tests should therefore be struck down. Patrice, 136 Wash.2d at 852, 966 P.2d 1271.
¶ 59 The majority misidentifies the title of SHB 3055 when it holds the title expresses the bill's subject matter. As discussed above, the title of SHB 3055 for the purposes of evaluating its constitutionality under article II, section 19 is "AN ACT Relating to admissibility of DUI tests." St. Paul requires the title of the amendatory act to identify and purport to amend a prior act. See St. Paul, 40 Wash.2d at 355, 243 P.2d 474 ("`If the title identifies and purports to amend a prior act . . . .'" (emphasis added) (quoting 1 J.G. SUTHERLAND, supra, § 1908)). "AN ACT Relating to admissibility of DUI tests" clearly does neither.
¶ 60 The majority attempts to shoehorn SHB 3055 into the St. Paul framework by including the recitation of the statutory provisions affected as part of its title, majority at 7, but doing so runs afoul of the rule that constitutional inquiries focus solely on the narrative description of the act. Thomas, 103 Wash.App. at 808, 14 P.3d 854 (citing Fray, 134 Wash.2d 637, 952 P.2d 601; Patrice, 136 Wash.2d 845, 966 P.2d 1271). Because the title of SHB 3055 does not identify and purport to amend a prior statute, an inquiry into its constitutionality is not barred by the holding of St. Paul.

IV. LEGISLATIVE INVASION OF JUDICIAL POWER
¶ 61 Mr. Jensen also argues SHB 3055 invades the article IV judicial power because it prevents the courts from determining the admissibility of BAC tests once the State has met its prima facie burden under subsection 4(4)(a) of SHB 3055.
¶ 62 "[T]here is no liberty, if the judiciary power be not separated from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control . . . ."[5] An independent and vigilant judiciary is essential to the preservation of individual rights in the face of governmental encroachment, constituting what James Madison described as "`an impenetrable bulwark against every assumption of power in the legislative or executive.'"[6] Thus, the separation of powers doctrine ensures "fundamental functions of each branch remain inviolate." Carrick v. Locke, 125 Wash.2d 129, 135, 882 P.2d 173 (1994). Echoing the Founders' vision of an independent judiciary, the United States Supreme Court has explained,
[T]he "judicial Power of the United States" vested in the federal courts by Art. III, § 1, of the Constitution can no more be shared with the Executive Branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto. Any other conclusion would be contrary to the basic concept of separation of powers and the checks and balances that flow from the scheme of a tripartite government.
United States v. Nixon, 418 U.S. 683, 704, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (quoting THE FEDERALIST, NO. 47, at 313 (S. Mittell ed.1938)), superseded by statute on other grounds by Bourjaily v. United States, 483 U.S. 171, 179, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).
¶ 63 Our constitution exclusively vests the judicial power in the courts, not the legislature: "The judicial power of the state shall be vested in a supreme court . ..." WASH. CONST. art. IV, § 1. The judicial power is the power to do that which the courts have *794 traditionally done.[7] "This court has recognized the inherent power and obligation of the judiciary to control all its necessary functions to promote the effective administration of justice." State v. Wadsworth, 139 Wash.2d 724, 740, 991 P.2d 80 (2000). This inherent power includes determining the admissibility of evidence. See, e.g., State v. Demery, 144 Wash.2d 753, 758, 30 P.3d 1278 (2001) ("trial court has wide discretion to determine the admissibility of evidence"); State v. Atsbeha, 142 Wash.2d 904, 913, 16 P.3d 626 (2001) ("Admissibility of evidence generally is within the sound discretion of the trial court.") (citing State v. Ellis, 136 Wash.2d 498, 504, 963 P.2d 843 (1998)). "If the legislature attempted to ... abolish or abridge the power of the courts, such an attempt would be unconstitutional and void." Deskins v. Waldt, 81 Wash.2d 1, 2-3, 499 P.2d 206 (1972) (citing Blanchard v. Golden Age Brewing Co., 188 Wash. 396, 63 P.2d 397 (1936)). Yet surrender of judicial independence is precisely what the majority does when it upholds a bill shackling the power of the courts to do that which the courts have traditionally done: Determine the admissibility of evidence.
¶ 64 Courts are vested with "the inherent power to govern court procedures." State v. Fields, 85 Wash.2d 126, 129, 530 P.2d 284 (1975).[8] "When a court rule and a statute conflict, the nature of the right at issue determines which one controls." State v. W.W., 76 Wash.App. 754, 758, 887 P.2d 914 (1995). "If the right is substantive, then the statute prevails; if it is procedural, then the court rule prevails." Id. The admissibility of evidence is a procedural matter.[9] The resolution of this claim turns on whether the language of SHB 3055 is permissive, preserving the courts' authority to exclude BAC test results under the rules of evidence, or mandatory, in which case it would be invalid. State v. Zwicker, 105 Wash.2d 228, 238, 713 P.2d 1101 (1986). SHB 3055 provides:
Nothing in this section shall be deemed to prevent the subject of the test from challenging the reliability or accuracy of the test, the reliability or functioning of the instrument, or any maintenance procedures. Such challenges, however, shall not preclude the admissibility of the test once the prosecution or department has made a prima facie showing of the requirements contained in (a) of this subsection. Instead, such challenges may be considered by the trier of fact in determining what weight to give to the test result.
SHB 3055, subsection 4(4)(c) (emphasis added).
¶ 65 According to the majority SHB 3055 is permissive because it "does not state [BAC] tests must be admitted if a prima facie burden is met; it states that such tests are admissible." Majority at 18. This conclusion is untenable when one considers the plain text of subsections 4(4)(a) and 4(4)(c). Subsection 4(4)(a) of SHB 3055 provides breath tests "shall be admissible at trial" once the State produces prima facie evidence to meet certain enumerated criteria concerning the administration of such tests.[10] Under subsection 4(4)(c), once the State meets its *795 prima facie burden, a defendant may not challenge the admissibility of the BAC test results on the grounds of "reliability or accuracy of the test, the reliability or functioning of the instrument, or any maintenance procedures."
¶ 66 The sole recourse under this statute for a defendant confronted with an inaccurate and unreliable test result is to argue diminished weight should be given by the trier of fact, not to contest its admissibility.[11] These provisions clearly preclude challenges to the admissibility of BAC test results on reliability and accuracy grounds once the requirements of subsection 4(4)(a) are met. Consequently, these provisions conflict with the courts' judicial power to determine the admissibility of evidence pursuant to our rules of evidence.
¶ 67 To bolster its assertion SHB 3055 is permissive in nature, the majority relies on Zwicker and State v. Long, 113 Wash.2d 266, 778 P.2d 1027 (1989). This reliance is misplaced. The statutory provision at issue in those cases, RCW 46.61.517, read, "The refusal of a person to submit to a test of the alcoholic content of his blood under RCW 46.20.308 is admissible into evidence at a subsequent criminal trial." Laws of 1983, ch. 165, § 27. Critically, and unlike SHB 3055, the above language did not restrict the courts' ability to exclude evidence on the basis of its relevance or its probative value if outweighed by the danger of unfair prejudice by restricting such challenges only to the question of the weight of the evidence. In Zwicker we held the statute at issue was valid, interpreting "is admissible" as permissive and not mandating admissibility in all cases. Zwicker, 105 Wash.2d at 238, 713 P.2d 1101. However, we also cautioned that "any conflict with ER 401 and 403 ... would require invalidation of the statute." Id. (emphasis added).
¶ 68 SHB 3055 strips the court of its essential judicial power to exclude inadmissible evidence. We must defend the power and independence of the judiciary, not rush to surrender it to the legislative or executive branch.[12]

V. CONCLUSION
¶ 69 "Article II, section 19 serves to protect serious constitutional interests." Patrice, 136 Wash.2d at 851, 966 P.2d 1271. The majority twice misapplies the requirements of article II section 19: first, it erroneously circumvents the need for an inquiry into the substantive provisions of SHB 3055 under the single-subject rule, and second it ignores precedent defining "title" for the purposes of article II, section 19 analysis. The majority then hastens to surrender our independence from the legislative and executive branches in the face of a conspicuous intrusion into the independent judicial power to exclude unreliable and unfairly prejudicial evidence.
¶ 70 I dissent.
Dissenting: J.M. JOHNSON, JJ.
NOTES
[1] The act is also referred to by its session law number, Laws of 2004, ch. 68.
[2] This rule was affirmed in the following cases: Keeting v. Pub. Util. Dist. No. 1, 49 Wash.2d 761, 306 P.2d 762 (1957); Goodnoe Hills Sch. Dist. No. 24 v. Forry, 52 Wash.2d 868, 329 P.2d 1083 (1958); Water Dist. No. 105 v. State, 79 Wash.2d 337, 485 P.2d 66 (1971); & Belancsik v. Overlake Mem'l Hosp., 80 Wash.2d 111, 492 P.2d 219 (1971).
[3] Further, as the dissent recognizes, the rule applied in St. Paul has been applied in subsequent cases. What the dissent fails to acknowledge is that the St. Paul analysis in turn cited to a 1908 treatise for support and was not a new or novel approach. St. Paul and other cases are entirely consistent with the general understanding of how article II, section 19 would operate when it was adopted.
[4] RCW 2.04.190 reads in part, "[t]he supreme court shall have the power to prescribe ... the forms of writs and all other process, ... of taking and obtaining evidence; ... and generally to regulate and prescribe by rule the forms for and the kind and character of the entire pleading, practice and procedure to be used in all suits, actions, appeals and proceedings of whatever nature ...."
[5] SHB 3055, section 4(4)(a) reads:

A breath test performed by any instrument approved by the state toxicologist shall be admissible at trial or an administrative proceeding if the prosecution or department produces prima facie evidence of the following:
(i) The person who performed the test was authorized to perform such test by the state toxicologist;
(ii) The person being tested did not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test;
(iii) The person being tested did not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen-minute observation period;
(iv) Prior to the start of the test, the temperature of the simulator solution as measured by a thermometer approved of by the state toxicologist was thirty-four degrees centigrade plus or minus 0.3 degrees centigrade;
(v) The internal standard test resulted in the message "verified";
(vi) The two breath samples agree to within plus or minus ten percent of their mean to be determined by the method approved by the state toxicologist;
(vii) The simulator external standard result did lie between .072 to .088 inclusive; and
(viii) All blank tests gave results of .000.
[6] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923). This standard was adopted implicitly in Washington in State v. Woo, 84 Wash.2d 472, 527 P.2d 271 (1974), and explicitly in State v. Canaday, 90 Wash.2d 808, 585 P.2d 1185 (1978).
[1] "[T]he single subject rule exists `to secure to every distinct measure of legislation a separate consideration and decision, dependent solely upon its individual merits.'" Martha J. Dragich, State Constitutional Restrictions on Legislative Procedure: Rethinking the Analysis of Original Purpose, Single Subject, and Clear Title Challenges, 38 HARV. J. ON LEGIS. 103, 114 (2001) (quoting Millard H. Ruud, No Law Shall Embrace More Than One Subject, 42 MINN. L. REV. 389, 390 (1958)). One type of logrolling involves "the enactment of an unpopular provision pertaining to one subject by attaching it to a more popular provision whose subject is unrelated," City of Burien v. Kiga, 144 Wash.2d 819, 825, 31 P.3d 659 (2001), but logrolling could likewise enable the passage of a bill comprised of a number of provisions that individually would not have garnered majority support. See Dragich, supra, at 115.
[2] The doctrine of stare decisis permits a court to "change a rule of law" upon "a clear showing that an established rule is incorrect and harmful before it is abandoned." In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970) (emphasis added). Although the St. Paul rule was never, in my view, "an established rule" that stare decisis should protect, the St. Paul rule in any case satisfies the stare decisis "incorrect and harmful" standard. See Reply Br. of Appellant at 10 n. 11 (asserting that the St. Paul rule is not "an established rule, but a rule of questionable origin, applied in only five cases, and not followed since 1971").
[3] Majority at 780. To support its assertion that the rule adopted in St. Paul "reflected the common understanding of how to interpret similar state constitutional provisions," the majority cited two cases from other jurisdictions. Majority at 780 (citing Morford v. Unger, 8 Iowa 82 (1859); In re Miller, 29 Ariz. 582, 244 P. 376 (1926)).
[4] See Amalgamated, 142 Wash.2d at 207-11, 11 P.3d 762. But see Pierce County v. State, 150 Wash.2d 422, 431 n. 3, 78 P.3d 640 (2003) (noting party's question as to "`whether going through the exercise of labeling a title as "broad" or "restrictive" really assists the constitutional analysis'"). At least one commentator has emphasized that the single-subject analysis should precede the analysis of the title and should be directed to the bill's contents: "It is well-established that even when combined, the single subject/clear title provision sets forth two independent requirementsthat a bill have only one subject, and that the bill's title clearly express that subject. The common phrasing of the rule suggests that clear title analysis cannot proceed until the subject of the bill has been determined and found to be `single.' ... [T]he subject of a bill should be measured by the content of its provisions. The provisions must relate to each other and together must constitute a single subject. The title must express the subject, but the title is not its test." Dragich, supra note 1, at 114, 146 (emphasis added) (footnote omitted).
[1] St. Paul was followed by this court on only four occasions, most recently 25 years ago, and with good reason: its holding has no basis in the constitution. "Appropriate constitutional analysis begins with the text and, for most purposes, should end there as well." Malyon v. Pierce County, 131 Wash.2d 779, 799, 935 P.2d 1272 (1997). Article II, section 19 says, "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." Clearly, the plain text of our Constitution does not differentiate between "original" and "amendatory" bills. There is no principled reason, and the majority offers none, to forgo article II, section 19 analysis simply because a bill purports to amend another. This court should recognize what the past 25 years in our article II, section 19 jurisprudence indicate: St. Paul and its progeny undermine the constitutional provisions they purport to interpret, are inconsistent with subsequent precedent, and should be overruled.
[2] Examples of general titles include: "AN ACT Relating to violence prevention." In re Boot, 130 Wash.2d 553, 566, 925 P.2d 964, 971 (1996); "AN ACT Relating to Community Colleges." Wash. Educ. Ass'n v. State, 97 Wash.2d 899, 906-07, 652 P.2d 1347 (1982); "An Act Relating to the death penalty." State v. Grisby, 97 Wash.2d 493, 498, 647 P.2d 6 (1982); "An Act Relating to industrial insurance." Wash. State Sch. Dirs. Ass'n v. Dep't of Labor & Indus., 82 Wash.2d 367, 371, 510 P.2d 818 (1973).
[3] Examples of restrictive titles include: "An Act Relating to increasing penalties for armed crimes." Broadaway, 133 Wash.2d at 123, 942 P.2d 363; "An Act Relating to the acquisition of property by public agencies." Daviscourt v. Peistrup, 40 Wash.App. 433, 437, 698 P.2d 1093 (1985); "AN ACT relating to the rights and disabilities of aliens with respect to land." De Cano v. State, 7 Wash.2d 613, 623, 110 P.2d 627 (1941).
[4] Quoting Treffry v. Taylor, 67 Wash.2d 487, 491, 408 P.2d 269 (1965).
[5] Baron De Montesquieu, The Spirit of the Laws 152 (Thomas Nugent, trans., Franz Neumann ed., Hafner Press 1949) (1748).
[6] Creating the Bill of Rights: The Documentary Record from the First Federal Congress 83-84 (Helen E. Veit et al. eds., Johns Hopkins Univ. Press 1991) (quoting 1 Annals of Congress 439 (Joseph Gales ed., 1789)).
[7] Richard B. Sanders, Battles for the State Constitution: A Dissenter's View, 37 Gonz. L.Rev. 1, 8, (2001/02) (quoting "`What the judicial power is, is what the judicial power has been.'" Justice Antonin Scalia, Oral Remarks at the Federalist Society Separation of Powers Seminar, Durango, Colo. (Sept. 28, 2001)).
[8] The majority asserts the power to promulgate the rules of evidence "is a legislatively delegated power of the judiciary." Majority at 781. Surely the majority is not suggesting that had RCW 2.04.190 not been enacted, we would be powerless to adopt rules of evidence. Our power to decide the admissibility of evidence stems from the constitution, independently of any auxiliary statutory authority. See Fields, 85 Wash.2d at 129, 530 P.2d 284. The legislature has no judicial power to delegate.
[9] Commonwealth v. Alexander, 5 S.W.3d 104, 106 (Ky.1999) ("The admissibility of evidence is governed by the Kentucky Rules of Evidence and is procedural in nature."); Hrouda v. Winne, 112 A.D.2d 304, 305, 491 N.Y.S.2d 749 (N.Y.App.Div. 1985) ("Rules governing the admissibility of evidence are procedural matters."); Kerr v. Palmieri, 325 Mass. 554, 557, 91 N.E.2d 754 (1950) ("statute relat[ing] to the admissibility of evidence is ... procedural").
[10] Subsection 4(4)(a) states, "[a] breath test performed by any instrument approved by the state toxicologist shall be admissible at trial or in an administrative proceeding if the prosecution or department produces prima facie evidence ...."
[11] Such prohibition on challenges to the admissibility of BAC test results is apparently precisely what the legislature had in mind in enacting SHB 3055. As the final bill report for both the House and the Senate clearly states, "Defense challenges to the reliability or accuracy of a breath test may not be used to prevent the introduction of the evidence once the prosecution has made a prima facie case." Final B. Rep. on SHB 3055, at 3 (emphasis added).
[12] Sanders, supra note 7, at 5.