**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
SUPREME COURT
STATE OF WASHINGTON
11/29/2023
BY ERIN L. LENNON
CLERK

**IN THE SUPREME COURT OF THE STATE OF WASHINGTON**

| | |
|---|---|
| GENE GONZALES and SUSAN GONZALES, HORWATH FAMILY TWO, LLC, and THE WASHINGTON LANDLORD ASSOCIATION, | |
| Petitioners, | No. 100992-5 |
| v. | ORDER AMENDING OPINION |
| GOVERNOR JAY INSLEE and STATE OF WASHINGTON, | |
| Respondents. | |

It is hereby ordered that the majority opinion of González, C.J., filed September 28, 2023, in the above entitled case is amended as indicated below.

On page 12, line 7 of the slip opinion, beginning with "The petitioners", delete all text down to and including "RCW 43.06.220(2)." on page 13, line 2, and insert:

> The petitioners also argue that the governor exceeded his authority by suspending their rights and their tenants' obligations under RCW 59.18.050, .080, .140(1), .160(1), .130, .170, and RCW 59.12.030. These statutes generally require tenants to follow their rental agreements and allow landlords to bring eviction actions under certain conditions.

*Gonzales v. Inslee,* No. 100992-5 (order amending opinion)

To the extent these statutes require the tenants to obey the law and their contracts, they were not suspended. Nothing in the proclamations relieved tenants of those obligations. To the extent these statutes create a mechanism for landlords to enforce their legal rights in court, those statutes do not establish statutory obligations or limitations and thus fall outside of RCW 43.06.220(2).

Retain "[7]" after "RCW 43.06.220(2)." at the end of the paragraph, and the text of footnote 7.

DATED this 29th day of November, 2023.

_____
González, C.J.
Chief Justice

APPROVED:

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 28, 2023

*Gonzáles, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 28, 2023

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| GENE GONZALES and SUSAN GONZALES, HORWATH FAMILY TWO, LLC, and THE WASHINGTON LANDLORD ASSOCIATION, | No. 100992-5 |
| Petitioners, | En Banc |
| v. | |
| GOVERNOR JAY INSLEE and STATE OF WASHINGTON, | Filed: September 28, 2023 |
| Respondents. | |

GONZÁLEZ, C.J.— The COVID-19 pandemic was a worldwide emergency. COVID-19 killed millions of people, destroyed livelihoods, and is still having profound effects. As it spread throughout the nation, governors and federal officials responded under their emergency powers to save lives and livelihoods.

Our governor has enhanced powers to act in an emergency under RCW 43.06.220 and related statutes. *See Cougar Bus. Owners Ass'n v. State*, 97 Wn.2d 466, 472-75, 647 P.2d 481 (1982), *overruled in part on other grounds by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). The petitioners

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

contend the governor exceeded his authority here and violated their statutory and constitutional rights. History is unfortunately replete with times that real or perceived emergencies were used by those in power to violate fundamental rights: suspects have been tried before improper courts, habeas corpus has been effectively suspended, and citizens and lawful residents of the country have been interned and deported under the press of perceived emergencies. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (plurality opinion); *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 18 L. Ed. 281 (1866); *Ex parte Merryman*, 17 F. Cas. 144 (Taney, Circuit Justice, C.C.D. Md. 1861) (No. 9,487); *Korematsu v. United States*, 584 F. Supp. 1406 (N.D. Cal. 1984); Yxta Maya Murray, *The Latino-American Crisis of Citizenship*, 31 U.C. DAVIS L. REV. 503, 521 (1998). In more deliberate times, we hope, these violations of rights would not have survived the checks and balances of a democratic society operating under law. As the United States Supreme Court observed long ago, "The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of [people], at all times, and under all circumstances." *Milligan*, 71 U.S. at 120-21. The same is true of our state constitution.

In an attempt to both empower and properly constrain the governor's use of power in emergencies, our legislature has enacted and revised laws concerning the

*Gonzales v. Inslee,* No. 100992-5

executive's emergency powers. *See* RCW 38.52.050; RCW 43.06.010, .200-.270.

Under these laws, the governor is empowered to prohibit "activities as he or she

reasonably believes should be prohibited to help preserve and maintain life, health,

property or the public peace." RCW 43.06.220(1)(h).

Acting under these laws, Governor Inslee imposed a moratorium on evicting

people from their homes for failing to pay rent from March 2020 through June

2021. Proclamation 20-19.6.[1] We are asked whether this eviction moratorium was

lawful. We conclude that it was and affirm the courts below.

BACKGROUND

In early January 2020, the CDC (United States Centers for Disease Control

and Prevention) warned of a cluster of pneumonia cases in Wuhan, China. Less

than two weeks later, COVID-19 was first confirmed in Washington State. By the

end of the month, the World Health Organization declared the COVID-19 outbreak

"a 'public health emergency of international concern'" and the United States

Health and Human Services Secretary declared a public health emergency. Clerk's

Papers (CP) at 544. The first confirmed COVID-19 death followed soon after.

---

[1] Proclamation by Governor Jay Inslee, No. 20-19.6 (Wash. Mar. 18, 2021),
https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-19.6.pdf
[https://perma.cc/X9AS-5MTR].

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gonzales v. Inslee,* No. 100992-5

The virus that causes COVID-19 easily spreads from person to person.[2]  It can be spread when a person carrying the virus talks, sneezes, or coughs, and it can be spread by a person who has no symptoms.  The risk of transmission is significantly higher indoors.  A significant portion of those who contracted COVID-19, especially in those early days, required hospitalization and intensive care.

COVID-19 threatened to overwhelm our health care system.  Initially, treatment was difficult and there were few helpful medical interventions.  One thing was clear: physical distance greatly reduced the chance of transmission.

As COVID-19 was spreading quickly through our state, Governor Inslee declared a state of emergency.  He limited public gatherings, closed schools, and closed most public venues.  Nonetheless, the disease continued to spread and by mid-March 2020, Washington had the highest number of COVID-19 cases and one of the highest per capita rates of infection of any state in the country. By the end of March 2020, hundreds of new cases were being confirmed in Washington every day, with likely thousands more unreported.

In response, the governor escalated his attempts to slow the transmission of COVID-19.  Among other things, he directed Washington residents to stay home

---

[2] COVID-19 is a disease caused by the SARS-CoV-2 virus, which is a coronavirus not identified in humans prior to December 2019.

4

*Gonzales v. Inslee,* No. 100992-5

except for certain essential activities and jobs and categorically prohibited both public and private gatherings. This slowed the transmission of COVID-19. It also had an obvious and immediate effect on many people's incomes. Over 1.6 million people in Washington filed initial unemployment claims between March and December 2020.

It was clear that the COVID-19 pandemic would cause significant and widespread financial hardship, particularly on those with low and moderate incomes. It was also clear that mass evictions during a pandemic would increase COVID-19 transmission by forcing people into crowded courthouses for eviction proceedings, into crowded homeless shelters and encampments, and into the increasingly crowded homes of friends and family.

In response, the governor issued another proclamation that briefly suspended most residential evictions. Proclamation 20-19.[3] That moratorium was extended and modified over the next year and a half as the pandemic continued to spread. *See* Proclamation 21-09.01;[4] CP at 687-90. The CDC followed suit with a nationwide residential eviction moratorium.

---

[3] Proclamation by Governor Jay Inslee, No. 20-19 (Wash. Mar. 18, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-19%20-%20COVID-19%20Moratorium%20on%20Evictions%20%28tmp%29.pdf [https://perma.cc/BBN9-QEM8]. This moratorium has since expired.

[4] Proclamation by Governor Jay Inslee, No. 21-09.01 (Wash. Sept. 24, 2021), https://governor.wa.gov/sites/default/files/proclamations/proc_21-09.1.pdf [https://perma.cc/4U29-R95L].

*Gonzales v. Inslee,* No. 100992-5

While the specifics of the eviction moratoriums shifted over time, generally speaking, they prohibited residential landlords from initiating or enforcing, and law enforcement from assisting in, an eviction based on the failure to pay rent. Proclamation 20-19, at 2-3. The obligation to pay rent, of course, continued, and evictions were allowed for other reasons, such as in response to a significant risk to the health or safety of others created by the resident or when the owner planned to personally occupy or sell the property. In the second proclamation, landlords were prohibited from treating any unpaid rent that was the result of COVID-19 as an enforceable debt unless the landlord established that the tenant was offered, and refused or failed to comply with, a reasonable repayment plan. Proclamation 20-19.1, at 4.[5]

The record suggests that without these moratoriums, up to 790,000 people in Washington would have been evicted from their homes during the pandemic. Verbatim Rep. of Proc. (VRP) at 15. It also suggests there would have been up to 59,000 additional COVID-19 cases and 621 more deaths in our state. *Id*.

As vaccinations were increasingly available and the moratorium wound down, the legislature enacted a rental assistance program and an eviction resolution

---

[5] Proclamation by Governor Jay Inslee, No. 20-19.1 (Wash. Apr. 16, 2020), https://governor.wa.gov/sites/default/files/proclamations/20-19.1%20-%20COVID-19%20Moratorium%20on%20Evictions%20Extension%20%28tmp%29.pdf [https://perma.cc/G9YP-7HYP].

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

pilot program.  LAWS OF 2021, ch. 115.  Among other things, the legislature created a mechanism and funding to compensate, at least partially, landlords whose tenants defaulted on rent despite being offered reasonable repayment plans.  LAWS OF 2021, ch. 115 §§ 4-5; RCW 59.18.630; RCW 43.31.605.

The eviction moratorium never relieved tenants of the obligation to pay rent.  Some tenants did stop paying their rent and that failure imposed a significant hardship on some landlords.  Gene and Susan Gonzales, Horwath Family Two, LLC, and the Washington Landlord Association (collectively petitioners) brought an injunctive and declaratory judgment action against Governor Inslee and the State in Lewis County Superior Court.  They contend, among other things, that the governor had exceeded his statutory emergency powers under RCW 43.06.220.  They also argue that if the statute had authorized the moratorium, it unconstitutionally delegated legislative powers to the governor; that the eviction moratorium unconstitutionally impaired contracts in violation of the state constitution; that it constituted a taking under the state constitution; that it violated the petitioners' right of access to the courts; and that it violated separation of powers.

The State successfully moved to transfer the case to Thurston County Superior Court.  There, the trial court dismissed the case at summary judgment.  The Court of Appeals affirmed, and we granted review.  *Gonzales v. Inslee*, 21

*Gonzales v. Inslee,* No. 100992-5

Wn. App. 2d 110, 504 P.3d 890, *review granted*, No. 100992-5 (Wash. Oct. 14, 2022).  Appleseed Foundation, Alliance for Justice, and Western Center on Law and Poverty; City of Seattle; and the King County Bar Association Housing Justice Project filed amici briefs in support of the State. Rental Housing Association of Washington, Pacific Legal Foundation, and Citizen Action Defense Fund filed amicus briefs in support of the petitioners.

ANALYSIS

This case presents only questions of law.  Our review is de novo.  *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013) (citing *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 908, 154 P.3d 882 (2007)).

1. MOOTNESS

The State argues that this case is moot because the moratorium has expired. But this court will, from time to time, consider moot questions when "'it can be said that matters of continuing and substantial public interest are involved.'" *In re Dependency of M.S.R.*, 174 Wn.2d 1, 11, 271 P.3d 234 (2012) (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)).  To determine whether it is appropriate to reach a moot question, we may consider (1) whether the case is a matter of public concern or simply a private dispute, (2) the need for an authoritative determination to guide public officials in the future, (3) the likelihood of reoccurrence, and (4) the quality of the advocacy.  *Randy Reynolds &*

8

*Gonzales v. Inslee,* No. 100992-5

*Assocs. v. Harmon*, 193 Wn.2d 143, 152-53, 437 P.3d 677 (2019). We find that all four factors weigh in favor of considering this case on the merits.

The power of the governor under the emergency statutes is a matter of public concern. Undoubtedly, our state will face crises again that will call for the use of emergency power. It is appropriate for this court to consider whether that power was used lawfully here to guide its use in the future. Finally, the quality of advocacy on both sides and from amici is excellent. We decline to dismiss this appeal as moot.

## 2. VENUE

The petitioners argue that venue was improperly transferred from Lewis County to Thurston County. In actions "[a]gainst a public officer . . . for an act done by him or her in virtue of his or her office," venue shall be "in the county where the cause, or some part thereof, arose." RCW 4.12.020(2). "When this statute applies, venue in the specified county is mandatory." *Johnson v. Inslee*, 198 Wn.2d 492, 496, 496 P.3d 1191 (2021) (citing *Eubanks v. Brown*, 180 Wn.2d 590, 595-96, 327 P.3d 635 (2014)).

The governor is a public officer. *Id*. His emergency proclamations are acts done in Thurston County by the virtue of his office. *Id.* at 498; *see also* CP at 699-701. Venue was appropriately transferred.

9

*Gonzales v. Inslee,* No. 100992-5

### 3. STATUTORY AUTHORITY

The petitioners contend that the eviction moratorium was not a proper

exercise of the governor's statutory authority under RCW 43.06.220. Most

relevantly, under this statute:

> (1) The governor after proclaiming a state of emergency and prior to terminating such, may, in the area described by the proclamation issue an order prohibiting:
>
> . . . .
>
> (h) Such other activities as he or she reasonably believes should be prohibited to help preserve and maintain life, health, property or the public peace. [6]
>
> (2) The governor after proclaiming a state of emergency and prior to terminating such may, in the area described by the proclamation, issue an order or orders concerning waiver or suspension of statutory obligations or limitations in the following areas:
>
> . . . .
>
> (g) Such other statutory and regulatory obligations or limitations prescribing the procedures for conduct of state business . . . .

RCW 43.06.220.

The petitioners argue that properly understood, the eviction moratoriums did

not merely prohibit the activity of initiating or enforcing an eviction or a debt

under .220(1)(h). Instead, the petitioners contend, the eviction moratoriums waived

---

[6] The petitioners do not challenge the governor's reasonable belief that the moratorium was necessary to help preserve and maintain life, health, property, or the public peace.

or suspended statutes outside of the enumerated categories in RCW 43.06.200(2). Most specifically, the petitioners point to the tenants' obligation to pay rent under RCW 59.18.080 and RCW 59.18.130. Appellants' Suppl. Br. at 36. RCW 59.18.080 provides in relevant part that "[t]he tenant shall be current in the payment of rent including all utilities which the tenant has agreed in the rental agreement to pay before exercising any of the remedies accorded him or her under the provisions of this chapter." RCW 59.18.130 provides, relevantly, that "[e]ach tenant shall pay the rental amount at such times and in such amounts as provided for in the rental agreement or as otherwise provided by law and comply with all obligations imposed upon tenants by applicable provisions of all municipal, county, and state codes, statutes, ordinances, and regulations."

"Suspend" is defined, most relevantly, as "to cause to stop temporarily . . . to set aside or make temporarily inoperative . . . to defer to a later time on specified conditions . . . to hold in an undetermined or undecided state awaiting further information." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1259 (11th ed. 2014). An "obligation" is "[a] legal or moral duty to do or not do something." BLACK'S LAW DICTIONARY 1292 (11th ed. 2019). A "statutory obligation" is "[a]n obligation – whether to pay money, perform certain acts, or discharge duties – that is created by or arises out of a statute, rather than based on an independent contractual or legal relationship." *Id.* at 1294.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We agree with the courts below that the governor did not waive or suspend the tenant's obligation to pay rent under either RCW 59.18.080 or .130. In fact, the proclamations emphasized that tenants should and must pay rent. *See* Proclamation 20-19.1, at 2. The obligation to pay rent was never waived or suspended, regardless of whether some tenants took advantage of the fact they would not be immediately evicted if they stopped paying.

The petitioners also argue that the governor exceeded his authority by suspending their right to evict. Appellants' Suppl. Br. at 36. They do not, however, identify in their briefing to this court a specific statute embodying that right that would raise an issue under RCW 43.06.220(2). Before the trial court, the petitioners had argued that the moratoriums suspended, in addition to RCW 59.18.080 and .130, RCW 59.18.050, .140(1), .160(1), .170, and RCW 59.12.030. CP at 205-07, 266-68. These other statutes generally require tenants to follow their rental agreements and allow landlords to bring eviction actions under certain conditions. Given that the landlords have not renewed these arguments before this court, we will not interrogate them deeply. We will note, however, that to the extent these statutes require the tenants to obey the law and their contracts, they were not suspended. Nothing in the proclamations relieved tenants of those obligations. To the extent these statutes create a mechanism for landlords to

enforce their legal rights in court, those statutes do not establish statutory obligations or limitations and thus fall outside of RCW 43.06.220(2).[7]

We hold that the governor acted within his statutory authority in prohibiting certain activities under RCW 43.06.220(1)(h) and that the petitioners have identified no statutory obligations or limitations that were waived or suspended for purposes of RCW 43.06.220(2). Nothing in RCW 43.06.220 suggests the governor is limited to prohibiting activities that are untouched by statutes. As no identified statutory obligations or limitations were waived or suspended, we do not reach the petitioners' argument that allowing the governor to suspend a statute under these circumstances would violate separation of powers by improperly delegating power to the governor or that allowing the governor to suspend a statute under .220(1)(h) would render .220(2) and .220(4) superfluous.

---

[7] While not identified by the petitioners as a statute that was suspended or limited, we note that RCW 59.18.650 squarely concerns landlords' right to evict. But this statute was enacted in 2021 and became effective May 10, 2021, long after the eviction moratorium was put in place and about seven weeks before it was rescinded. LAWS OF 2021, ch. 212, § 7; Proclamation 20-19.6, at 4. This lengthy and detailed statute sets forth the lawful reasons a landlord has to evict, refuse to continue a tenancy, or end a period tenancy and structures how that right may be enforced. RCW 59.18.650(1)(a) ("A landlord may not evict a tenant, refuse to continue a tenancy, or end a periodic tenancy except for the causes enumerated in subsection (2) of this section and as otherwise provided in this subsection.") Nothing in RCW 59.18.650 or its legislative history suggests the legislature meant to use it to vacate the eviction moratorium those last few weeks it was in effect.

*Gonzales v. Inslee,* No. 100992-5

4. CONTRACTS CLAUSE

The petitioners argue that the eviction moratorium violates article I, section 23 of the state constitution. That section states that "[n]o bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed." WASH. CONST. art. I, § 23. We apply a three-part test to such challenges, asking, "(1) Does a contractual relationship exist, (2) does the legislation substantially impair the contractual relationship, and (3) if there is substantial impairment, is the impairment reasonable and necessary to serve a legitimate public purpose?" *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 414, 377 P.3d 199 (2016) (citing *Wash. Educ. Ass'n v. Dep't of Ret. Sys.*, 181 Wn.2d 233, 243, 332 P.3d 439 (2014)); *see also Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 431, 54 S. Ct. 231, 78 L. Ed. 413 (1934) ("The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them." (citing *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.)122, 197-98, 4 L. Ed. 529 (1819))).

A contractual relationship exists, so the first factor is met. The State contends that the moratorium did not substantially impair that relationship under *Blaisdell*, 290 U.S. 398. *Blaisdell* upheld the constitutionality of a Minnesota state statute that put a temporary moratorium on foreclosures and execution sales during an economic crisis. *See id.*, 290 U.S. at 416, 439-40.

14

*Gonzales v. Inslee,* No. 100992-5

The petitioners argue *Blaisdell* is inapplicable because the Minnesota statute required those who benefited from the moratorium to pay the de facto rental value of their property. *See id.*, 290 U.S. at 445. But nothing in the governor's proclamations relieved the tenants' obligation to pay rent.

Courts around the country have concluded that COVID-19 eviction moratoriums do not violate contracts clause protections. *See, e.g., Farhoud v. Brown*, 3:20-cv-2226-JR, 2022 WL 326092, at *9 (D. Or. Feb. 3, 2022); *Apt. Ass'n of L.A. County, Inc. v. City of Los Angeles*, 10 F.4th 905, 914 (9th Cir. 2021) *cert. denied*, 142 S. Ct. 1699 (2022); *Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1100 (E.D. Wash. 2021), *vacated as moot*, No. 22-35050, 2023 WL 5031498 (9th Cir. Aug. 8, 2023) (holding that "the eviction moratorium does not substantially impair Plaintiffs' lease agreements. Even if the Court were to find that the moratorium operated to substantially impair Plaintiffs' contractual rights, Plaintiffs' Contracts Clause claim fails because the eviction moratorium advances a significant and legitimate public purpose in an appropriate and reasonable way"); *S. Cal. Rental Hous. Ass'n v. County of San Diego*, 550 F. Supp. 3d 853, 864 (S.D. Cal. 2021).

We conclude that the eviction moratorium did not substantially impair any contractual obligation or relationship. As in *Blaisdell*, it merely delayed the execution of a particular judicial remedy for the failure to pay rent in a highly regulated field.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

5. TAKINGS

The petitioners argue that the eviction moratorium was a per se physical taking of their property requiring just compensation under article I, section 16 of the state constitution. Appellants' Suppl. Br. at 11.[8] The petitioners do not bring a claim under the federal takings clause and do not argue that the moratorium was a regulatory taking. They call to our attention the United States Supreme Court's recent opinion interpreting the federal takings clause in *Cedar Point Nursery v. Hassid*, __ U.S. __, 141 S. Ct. 2063, 210 L. Ed. 2d 369 (2021). *Cedar Point* held, among other things, that the right to exclude was an essential attribute of property that was protected by the federal takings clause. *Id.* at 2080. We have not yet had occasion to consider whether the right to exclude is accorded similar protection under article I, section 16.

Assuming without deciding that *Cedar Point* applies to article I, section 16, we do not find it helpful. *Cedar Point* concerned a statute that allowed union organizers to come onto property without the property owner's permission. *Id.* There has been no similar intrusion here. The tenants are on the landlords' property with the landlords' permission under a type of property arrangement that preexists the state and federal constitutions. *See* 2 FREDERICK POLLOCK &

---

[8] We recognize it is unclear whether a takings claim is appropriately brought in a declaratory judgment and injunctive action as the remedy is damages. Given the importance of the issue, we have elected to reach the merits.

*Gonzales v. Inslee,* No. 100992-5

FREDERIC WILLIAM MAITLAND, THE HISTORY OF ENGLISH LAW BEFORE THE TIME OF EDWARD I, at 129-34 (2d ed. 1898) (discussing the landlord/tenant common law). Government regulation of that voluntary relationship, without more, is not a taking. *Chong Yim v. City of Seattle*, 194 Wn.2d 651, 673, 451 P.3d 675 (2019); *see also Yee v. City of Escondido*, 503 U.S. 519, 532, 112 S. Ct. 1522, 118 L. Ed. 2d 153 (1992) (finding extensive regulation of mobile home parks was not a per se taking). "'This Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails.'" *Yee*, 503 U.S. at 528-29 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982)). We note that other courts have concluded, even after *Cedar Point*, that COVID-19 eviction moratoriums are not per se takings. *E.g.*, *Jevons*, 561 F. Supp. 3d at 1106 ("the moratorium does not constitute a per se taking because the moratorium did not require Plaintiffs to submit to physical occupation or invasion of their land and did not appropriate Plaintiffs' right to exclude").

We conclude that the moratoriums were not a physical taking of the petitioners' property under article I, section 16 of the state constitution.[9]

---

[9] We are not without sympathy to the fact that the petitioners have been made to bear the cost of accommodating a public need. We note that both Congress and the Washington State Legislature have appropriated significant funds to defray at least some of that cost in situations

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gonzales v. Inslee,* No. 100992-5

6. ACCESS TO THE COURTS

The moratoriums temporarily prevented landlords and their agents from initiating or enforcing, and law enforcement from assisting in, evictions based on the failure to pay rent. The petitioners contend that the eviction moratoriums denied them access to the courts and violated separation of powers. The State contends that the right of access to the courts is subject to rational basis review and that any limitations survive that review.

The right of access to the courts is "'the bedrock foundation upon which rest all the people's rights and obligations.'" *Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 979, 216 P.3d 374 (2009) (quoting *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991)). "It is the duty of the courts to administer justice by protecting the legal rights and enforcing the legal obligations of the people." *Id.* (citing *John Doe*, 117 Wn.2d at 780).

We recognize that this court, relying exclusively on federal precedent, wrote that "[a]ccess to the courts is not recognized, of itself, as a fundamental right." *Ford Motor Co. v. Barrett*, 115 Wn.2d 556, 562 & n.6, 800 P.2d 367 (1990) (citing

---

where the tenants have not paid rent and have avoided paying their debts. *See* LAWS OF 2021, ch. 334, § 129(45) (appropriating $658 million for emergency rental and utility assistance); American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 3201, 135 Stat. 4, 54-58 (2021); Consolidated Appropriations Act, 2021, Pub. L No. 116-260, 134 Stat. 1182 (2020); *see also Treasury Rent Assistance Program (T-RAP)*, WASH. ST. DEP'T OF COM., https://www.commerce.wa.gov/serving-communities/homelessness/cares-act-and-state-rent-assistance [https://perma.cc/6VBV-GNH3].

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Boddie v. Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971);

*United States v. Kras*, 409 U.S. 434, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973);

*Ortwein v. Schwab*, 410 U.S. 656, 93 S. Ct. 1172, 35 L. Ed. 2d 572 (1973)).  But

that was in the context of an equal protection and due process challenge to a statute

that required arbitration of certain consumer protection claims, subject to a trial de

novo review in court.  *Id.* at 562-63 (citing RCW 19.118.100(3)). The court did not

consider whether the statute violated the right to access to the courts under article I,

section 10 of our state constitution.

Similarly, in a case that involved a trial court's power to restrain a litigant

who was filing so many motions that it threatened to preempt the family law

calendar, the Court of Appeals observed that "'[t]here is no absolute and unlimited

constitutional right of access to courts. All that is required is a reasonable right of

access—a reasonable opportunity to be heard.'" *In re Marriage of Giordano*, 57

Wn. App. 74, 77, 787 P.2d 51 (1990) (alteration in original) (quoting *Ciccarelli v.

Carey Canadian Mines, Ltd.,* 757 F.2d 548, 554 (3d Cir. 1985)).  Again, the court

relied on only federal cases and did not consider whether there was a right of

access to the courts under the state constitution.

We take this opportunity to make clear that our constitution "amply and

expressly" protects access to courts.  *Hous. Auth. v. Saylors*, 87 Wn.2d 732, 742,

557 P.2d 321 (1976).  As we have said before:

*Gonzales v. Inslee,* No. 100992-5

> Our constitution mandates that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." CONST. art. 1, § 10. That justice which is to be administered openly is not an abstract theory of constitutional law, but rather is the bedrock foundation upon which rest all the people's rights and obligations. In the course of administering justice the courts protect those rights and enforce those obligations. Indeed, the very first enactment of our state constitution is the declaration that governments are established to protect and maintain individual rights. CONST. art. 1, § 1. CONST. art. 1, §§ 1-31 catalog those fundamental rights of our citizens.

*John Doe*, 117 Wn.2d at 780-81 (alteration in original).

To the extent the Court of Appeals opinion suggests that access to the courts is subject to only rational basis review, we disagree. Something more is required. But this case does not give us an opportunity to squarely examine the appropriate test for deprivations of the right to access the courts or whether, under the state constitution, the level of protection provided depends on the right asserted. While the petitioners argue persuasively that the right is due more than rational basis review, the parties have not presented meaningful argument on the exact contours of the appropriate test. But even under the most stringent test, strict scrutiny, the governor's eviction moratorium survives.

Under strict scrutiny review, we uphold State action if it is necessary to achieve a compelling state interest. *State v. Smith*, 117 Wn.2d 263, 277, 814 P.2d 652 (1991) (citing *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)). The action must also be narrowly tailored to serve that compelling purpose. *In re*

20

*Gonzales v. Inslee,* No. 100992-5

*Parentage of L.B.*, 155 Wn.2d 679, 710, 122 P.3d 161 (2005) (citing *In re Custody of Smith*, 137 Wn.2d 1, 15, 969 P.2d 21 (1998)).

The State has amply established that the need was compelling.  It has also established that it was necessary and sufficiently narrowly tailored to accomplish that purpose. The eviction moratorium was narrow in scope, targeting evictions based on the failure to stay current on rent due to the enormous economic hardship caused by COVID-19.  The moratorium was also narrowed over time.  *See* Proclamation 20-19.6.  Tenants were never relieved of the obligation to pay rent and landlords were not denied the right to enforce that obligation in court, simply delayed during the pendency of the emergency.  Accordingly, we hold the right to access the courts was not infringed.

### 7. SEPARATION OF POWERS

The petitioners contend the governor's eviction moratorium infringed on the power of the courts, violating separation of powers.  The separation of powers between the three branches of government is embedded in our constitutional structure.  *Brown v. Owen*, 165 Wn.2d 706, 718, 206 P.3d 310 (2009) (quoting *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994)).  Separation of powers "'does not depend on the branches of government being hermetically sealed off from one another,'" but it instead operates to ensure "that the fundamental functions of each branch remain inviolate." *Hale v. Wellpinit Sch.*

21

*Gonzales v. Inslee,* No. 100992-5

*Dist. No. 49*, 165 Wn.2d 494, 504, 198 P.3d 1021 (2009) (quoting *Carrick*, 125 Wn.2d at 135). If "'the activity of one branch threatens the independence or integrity or invades the prerogatives of another,' it violates the separation of powers." *Putman*, 166 Wn.2d at 980 (internal quotation marks omitted) (quoting *City of Fircrest v. Jensen*, 158 Wn.2d 384, 394, 143 P.3d 776 (2006)).

The petitioners argue that the governor's Proclamation 20-19.6 violated separation of powers principles because the Governor limited the landlords' ability to file unlawful detainer actions. Appellants' Suppl. Br. at 17-18. The petitioners argue that this limitation infringed on the power of the judiciary. *Id*.

It is certainly true that this limitation affected the judiciary. But it affected only the judiciary's treatment of unlawful detainer actions. And unlawful detainer actions were created by the legislature in the first place. RCW 59.18.410; RCW 59.12.030. The legislature provided extensive details on when, where, and how to file those actions, as well as on how the courts should address them. Ch. 59.18 RCW. The legislature has the power (within constitutional limits) to limit, alter, or even completely eliminate unlawful detainer actions. *District of Columbia v. Towers*, 250 A.3d 1048, 1054 (D.C. 2021) (in context of claim by property owners challenging temporary moratorium on filing complaints seeking judgment of possession during COVID-19 pandemic, court holds that claims—there, claims for a judgment of possession and eviction—that are created by the legislature "can

22

*Gonzales v. Inslee,* No. 100992-5

likewise be constricted" by the legislature); *Ballard Square Condo. Owners Ass'n v. Dynasty Constr. Co.*, 158 Wn.2d 603, 617, 146 P.3d 914 (2006) ("a cause of action that exists only by virtue of a statute is not a vested right, and it can be retroactively abolished by the legislature"). The legislature did far less than eliminate unlawful detainer claims in this case: it delegated to the governor the authority to limit or alter the unlawful detainer statutes in times of emergency, and the governor used that authority to postpone property owners' ability to file such actions. Neither the legislature nor the governor improperly invaded the judiciary's authority.

We held recently, "Courts generally exercise their power only when a legal action is before them. Proclamation 20-19 does not limit what courts may do when an unlawful detainer action is filed but, rather, temporarily limits the filing of particular unlawful detainer actions in the first instance." *In re Recall of Inslee*, 199 Wn.2d 416, 427, 508 P.3d 635 (2022). Since the legislature created all the rules concerning the content and timing of unlawful detainer actions, it can "temporarily limit[] the filing of particular unlawful detainer actions in the first instance." *Id.* We conclude the temporary moratorium does not violate separation of powers.

23

*Gonzales v. Inslee,* No. 100992-5

CONCLUSION

We hold that this case is not moot, venue was properly transferred, and the governor acted within his statutory and constitutional authority in imposing a brief moratorium on evictions based on the failure to pay rent. Accordingly, we affirm the courts below and remand to trial court for any further proceedings necessary to implement this decision.

_____
González, C.J.

WE CONCUR:

_____          _____
                                                                  Gordon McCloud, J.

_____          _____
                                                                  Yu, J.

_____          _____
                                                                  Montoya-Lewis, J.

_____
Stephens, J.

24

*Gonzales v. Inslee*

No. 100992-5

JOHNSON, J. (dissenting)—This case concerns a challenge to the scope and limitation of the emergency powers statute, RCW 43.06.220, and whether the governor exceeded statutory or constitutional authority in issuing eviction moratorium proclamations in response to the COVID-19 pandemic. I would hold that the governor exceeded statutory authority when issuing the eviction moratorium proclamations.

The executive branch has historically led Washington's response to emergencies, and the proclamation of an emergency and the governor's issuance of executive orders to address that emergency are "by statute committed to the sole discretion of the Governor." *Cougar Bus. Owners Ass'n v. State*, 97 Wn.2d 466, 476, 647 P.2d 481 (1982), *overruled in part by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). RCW 43.06.010(12) empowers the governor to "proclaim a state of emergency" in response to a disaster that threatens "life, health, property, or the public peace," and an emergency proclamation unlocks "the powers granted the governor during a state of emergency."

*Gonzales v. Inslee*, No. 100992-5
(Johnson, J., dissenting)

Those powers are outlined in RCW 43.06.220. Here, Governor Inslee issued

the eviction moratorium proclamations under RCW 43.06.220(1)(h), which states:

> (1) The governor after proclaiming a state of emergency and prior to terminating such, may, in the area described by the proclamation issue an order prohibiting:
> . . . .
> (h) *Such other activities* as he or she reasonably believes should be prohibited to help preserve and maintain life, health, property or the public peace.

(Emphasis added.)

The eviction moratorium proclamations prohibited landlords from (1)

treating unpaid rent as an enforceable debt without first offering a reasonable

repayment plan and (2) pursuing eviction unless (a) it was "necessary to respond to

a significant and immediate risk to the health, safety, or property of others created

by the resident," (b) the landlord intended to personally occupy the premises as a

primary residence, or (c) the landlord intended to sell the property. Proclamation

20-19.6,[1] at 5.

The Landlords[2] argue Governor Inslee lacked authority under RCW

43.06.220(1)(h) to issue the eviction moratorium proclamations. In their view, the

proclamations suspended their statutory right to evict and the statutory obligation

---

[1] Proclamation by Governor Jay lnslee, No. 20-19.6 (Wash. Mar 18, 2021), https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-19.6.pdf [https://perma.cc/X9AS-5MTR].

[2] Petitioners are Gene and Susan Gonzales, Horwath Family Two LLC, and the Washington Landlord Association (collectively Landlords).

*Gonzales v. Inslee*, No. 100992-5
(Johnson, J., dissenting)

to pay rent. They argue subsection (1)(h) does not authorize the moratorium's prohibitions because a prohibition of "activities" does not encompass the suspension of statutes. Thus, the governor exceeded his authority under subsection (1)(h) in issuing the moratorium. The State counters, and the Court of Appeals agreed, the moratorium prohibited conduct without suspending any statute. It prohibited certain specified conduct or "activities," such as evicting tenants, which was subject to exceptions, and treating unpaid rent as an enforceable debt without first offering a reasonable repayment plan. The Court of Appeals concluded the moratorium did not suspend any statutes and nothing in subsection (1)(h) suggests the governor is not authorized to prohibit activities that may involve or impact statutory rights and obligations. The Court of Appeals did not resolve the question of whether subsection (1)(h) authorizes the suspension of statutes.

For reasons explained below, I would conclude the moratorium's prohibition on evictions suspended certain statutes that provide landlords *the statutory remedy of eviction*. I would also conclude that subsection (1)(h) does not authorize the suspension of statutes.[3]

---

[3] At the Court of Appeals, the State argued that even if the court concludes subsection (1)(h) does not authorize the suspension of statutes, the resolution of the case would be the same because the legislature's enactment of Engrossed Second Substitute Senate Bill 5160 (2021) ratified the governor's reliance on subsection (1)(h) to issue the eviction moratorium. The State did not renew this argument before this court, and it was not briefed by either party.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The moratorium did not expressly suspend any statutes. However, the Landlords argue the moratorium had the effect of suspending statutes relating to the remedy of seeking eviction and the obligation to timely pay rent. To support their position, the Landlords point to dictionary definitions of the word "suspend." These definitions include "'to stop temporarily,'" to "'make temporarily inoperative,'" or "'to defer to a later time on specified conditions.'" Appellants' Suppl. Br. at 36 (quoting MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/suspend). They argue that by delaying a landlord's ability to seek an eviction for nonpayment of rent, the moratorium suspended (or made "temporarily inoperative") the statutory remedy of eviction and the statutory obligation to timely pay rent.

The Landlords argue, and I agree, the moratorium had the effect of suspending those statutes that provide landlords the remedy of seeking an eviction by, in effect, limiting or altering the statutory conditions under which a landlord could seek eviction. Before the Court of Appeals, the Landlords pointed generally to chapter 59.12 RCW (forcible entry and forcible and unlawful detainer), and the Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW, as a collection of statutes that provide landlords the remedy of eviction under certain circumstances. For instance, RCW 59.18.180(2) provides a landlord may commence an action in unlawful detainer against a tenant where the tenant fails to substantially comply

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

with their statutory duties under RCW 59.18.130 or 59.18.140. And RCW 59.18.130 requires a tenant timely pay rent ("[T]enant shall pay the rental amount at such times and in such amounts as provided for in the rental agreement or as otherwise provided by law.").

Thus, the moratorium suspended (or made inoperable) RCW 59.18.180(2) by prohibiting landlords from seeking an eviction for nonpayment of rent where the statute establishes that as a basis for eviction. This same reasoning applies to the various permissible causes for an unlawful detainer action under RCW 59.18.180 that do not fall within the three exceptions provided in the moratorium. The moratorium deprived landlords of this statutory remedy.

I would conclude that the moratorium's prohibition on evictions, which restricted the circumstances under which a landlord could seek to evict a tenant, constitutes a statutory suspension. Because the eviction prohibition suspended statutes, I now turn to whether subsection (1)(h) authorizes the governor to suspend statutes.

RCW 43.06.220(1)(h) provides:

> (1) The governor after proclaiming a state of emergency and prior to terminating such, may, in the area described by the proclamation issue an order prohibiting:
>     . . . .
>     (h) Such other activities as he or she reasonably believes should be prohibited to help preserve and maintain life, health, property or the public peace.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The Court of Appeals concluded RCW 43.06.220(1)(h) is unambiguous. It reasoned the term "activities" is "extremely broad, and is broad enough to include the actions the proclamations prohibited regarding evictions and unpaid rent." *Gonzales v. Inslee*, 21 Wn. App. 2d 110, 128, 504 P.3d 890, *review granted*, No. 100992-5 (Wash. Oct. 14, 2022). I disagree.

"Activity" is defined as a "pursuit" and "an organizational unit for performing a specific function." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 22 (2002). It is also defined as "behavior or actions of a particular kind." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/activity (last visited Sept. 25, 2023). Put simply, an activity is "the doing of something." CAMBRIDGE ONLINE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/activity (last visited Sept. 25, 2023).

Because the term "activities" is defined broadly and encompasses "behaviors," "actions," or "the doing of something," it may appear, at first glance, that subsection (1)(h) is broad enough to authorize the suspension of statutes. However, a close examination of the statutory language and expressed legislative intent shows the term "activities" is limited under the statute. Because a statute's plain meaning "'is discerned from all that the Legislature has said in the statute and

6

related statutes which disclose legislative intent about the provision in question,'"

we also look to RCW 43.06.220(2) and the legislature's expressed intent. *Hardel*

*Mut. Plywood Corp. v. Lewis County*, 200 Wn.2d 199, 202, 515 P.3d 973 (2022)

(quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4

(2002)).

RCW 43.06.220(2) provides that during a state of emergency, the governor

may "issue an order or orders concerning waiver or suspension of statutory

obligations or limitations" in certain specified areas. RCW 43.06.220(2)

(identifying those areas to include permits for industrial, business, or medical uses

of alcohol, or "[s]uch other statutory and regulatory obligations or limitations

prescribing the procedures for conduct of state business"). This authority to

suspend certain expressed statutory obligations or limitations is further restricted

by RCW 43.06.220(4), which states that no order under subsection (2) may

continue for longer than 30 days "unless extended by the legislature through

concurrent resolution."

The Landlords argue that if the term "activities" under subsection (1)(h) is

interpreted to encompass suspension of statutes generally, then RCW 43.06.220(2)

would be rendered superfluous. The State seems to argue that subsection (1)(h)

authorizes the suspension of a statute, such as a statutory right or remedy, without

rendering subsection (2) superfluous. The State notes the moratorium impacted a

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

statutory remedy, not a statutory obligation or limitation, and because RCW

43.06.220(2) authorizes the waiver or suspension of statutory *obligations* or

*limitations*, the restriction in subsection (2) does not apply.

In the State's view, subsection (2) and its restrictions "do[] not apply to

emergency suspension or waiver of any and all statutory obligations—only those

that fall into either the six enumerated areas or the residual clause." Suppl. Br. of

Gov. Jay Inslee & State of Wash. at 18. Therefore, if subsection (1)(h) authorizes

the suspension of statutes, then subsection (2) should be read as imposing

restrictions on that authorization but only when the statute in question imposes an

obligation or limitation. If the statute in question does not impose an obligation or

limitation in an area identified by the statute, then subsection (2)'s restrictions on

suspending statutes do not apply. I disagree. This interpretation is not supported by

the language of the statute or the expressed legislative intent.

Both sections are written as grants of authority; subsection (2) is not written

as a restriction or limitation of the general grant under subsection (1). RCW

43.06.220(1)(h) provides, "The governor after proclaiming a state of emergency . .

. may . . . issue an order prohibiting . . . [s]uch other activities as he or she

reasonably believes should be prohibited to help preserve and maintain life, health,

property or the public peace." RCW 43.06.220(2) mirrors subsection (1)'s grant of

authority and expressly outlines the conditions under which the governor may

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gonzales v. Inslee*, No. 100992-5
(Johnson, J., dissenting)

suspend a statute. RCW 43.06.220(2) provides, "The governor after proclaiming a state of emergency . . . may . . . issue an order or orders concerning waiver or suspension of statutory obligations or limitations in the following areas." It must be a statutory (or regulatory) obligation or limitation in the six listed areas of subsections (a) through (f) or prescribe the procedure for conduct of state business or the orders, rules, or regulations of any state agency when strict compliance would prevent, hinder, or delay necessary action to address the emergency. RCW 43.06.220(2). If subsection (1)(h) is read to authorize the suspension of statutes generally, then the general grant of power in subsection(1)(h) would subsume the limited grant of power in subsection (2), rendering subsection (2) unnecessary and thus superfluous.

Further, the legislature's expressed intent is helpful to this analysis and supports the conclusion that subsection (1)(h) does not authorize the suspension of statutes. The legislature amended RCW 43.06.220 in 2019 and included the following section clarifying its intent:

> (1)(a) The legislature finds that the governor has broad authority to proclaim a state of emergency in any area of the state under RCW 43.06.010(12), and to exercise emergency powers during the emergency. These emergency powers have *historically included the ability under RCW 43.06.220(1)(h) to temporarily waive or suspend statutory obligations* by prohibiting compliance with statutory provisions during a proclaimed state of emergency when the governor reasonably believed it would help preserve and maintain life, health, property, or the public peace.

9

*Gonzales v. Inslee*, No. 100992-5
(Johnson, J., dissenting)

   (b) The legislature further finds that, in response to issues arising from flooding events in 2007, RCW 43.06.220(2) was amended by chapter 181, Laws of 2008, to *explicitly authorize the governor to temporarily waive or suspend a set of specifically identified statutes*. This amendment has become problematic for subsequent emergency response activities because *it has inadvertently narrowed the governor's ability to waive or suspend statutes under RCW 43.06.220(1)(h) by issuing orders temporarily prohibiting compliance with statutes not expressly identified in RCW 43.06.220(2)*.

   (2) The legislature intends to allow the governor to immediately respond during a proclaimed state of emergency by temporarily waiving or suspending other statutory obligations or limitations prescribing the procedures for conduct of state business, or the orders, rules, or regulations of any state agency, if strict compliance would in any way prevent, hinder, or delay necessary action in coping with the emergency.

LAWS OF 2019, ch. 472, § 1 (emphasis added).

The legislature amended RCW 43.06.220 with the specific focus of clarifying the scope of the governor's emergency power to waive or suspend statutes. In its findings and intent, the legislature acknowledged that historically subsection (1)(h) was interpreted to allow the governor to suspend or waive statutory *obligations* by *prohibiting compliance* with certain statutes. The legislature added subsection (2) to expressly authorize the governor to suspend statutory obligations or limitations. However, the addition of subsection (2) "inadvertently narrowed" that authorization by restricting the governor's ability to suspend statutory obligations or limitations to only those six specified areas. *See* RCW 43.06.220(2)(a)-(f). To remedy this restriction, the legislature amended

10

*Gonzales v. Inslee*, No. 100992-5
(Johnson, J., dissenting)

subsection (2) by adding subsection (2)(g)[4] to broaden the governor's power to

temporarily waive or suspend statutory obligations or limitations beyond the six

enumerated areas in (2)(a) through (f). This recently broadened grant of authority

under subsection (2)(g) is cabined. The broadened authorization permits the

governor to waive or suspend statutory and regulatory obligations or limitations

that prescribe the procedures for conduct of state business or the orders, rules, or

regulations of any state agency. That is, the governor is authorized only to waive or

suspend statutory obligations or limitations for certain executive functions.[5] And

that restricted authorization to suspend certain statutes derives from subsection (2),

not subsection (1)(h).

I would conclude RCW 43.06.220(1)(h) does not authorize the governor to

suspend statutes, and therefore, the governor lacked authority to prohibit landlords

from seeking the remedy of eviction as permitted by statute. The Court of Appeals

---

[4] "(2) The governor after proclaiming a state of emergency and prior to terminating such may, in the area described by the proclamation, issue an order or orders concerning waiver or suspension of statutory obligations or limitations in the following areas:
". . . .
"(g) Such other statutory and regulatory obligations or limitations prescribing the procedures for conduct of state business, or the orders, rules, or regulations of any state agency if strict compliance with the provision of any statute, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency."
[5] I agree with the majority's conclusion that the statutes that provide landlords the remedy of eviction are not statutory obligations or limitations that fall within RCW 43.06.220(2). *See* majority at 12.

11

*Gonzales v. Inslee*, No. 100992-5
(Johnson, J., dissenting)

and summary judgment for the State should be reversed on this basis and the case

remanded to the superior court.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____
Whitener, J.

*Gonzales v. Inslee*, No. 100992-5
(Johnson, J., dissenting)

12